Robert V. FERRY, Appellant,

v.

Stewart L. UDALL, Secretary of the Interior, et al., Appellees.

Autrice Copeland FREEMAN, Appellant,

v.

Stewart L. UDALL, Secretary of the Interior, et al., Appellees.

Nos. 19056, 19058.

United States Court of Appeals Ninth Circuit.

Sept. 9, 1964.

Rehearing Denied Oct. 21, 1964.

Herbert B. Finn, Stephen T. Meadow, Phoenix, Ariz., for appellant Ferry.

Elmer C. Coker, Phoenix, Ariz., for appellant Freeman.

Ramsey Clark, Asst. Atty. Gen., S. Billingsley Hill, Grace Powers Monaco, Attys., Dept. of Justice, Washington, D. C., Charles A. Muecke, U. S. Atty., Arthur E. Ross, Asst. U. S. Atty., Phoenix, Ariz., John E. Lindberg, Asst. U. S. Atty., Tucson, Ariz., for appellees.

Before HAMLEY, HAMLIN and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

Stewart L. Udall, Secretary of the United States Department of Interior (Secretary), and certain other individuals connected with the Department, were made defendants in these two cases brought in the District Court of Arizona. The first case (Freeman case) was filed on December 12, 1962, by Autrice Copeland Freeman. The second case (Ferry case) was filed on April 17, 1963, by Robert V. Ferry and Irving Baker, collectively referred to herein as Ferry. The plaintiffs in both cases sought district court review under the Administrative Procedure Act of decisions of defendants involving the administration and sale of public lands.

A summary judgment for defendants was entered in each case and on identical grounds. Because of the similarity in the facts involved and the identity of issues raised, the two cases were consolidated for the purposes of this appeal.

The essential facts in both cases are undisputed. The Secretary invited bidding on certain isolated tracts of public lands exposed for sale pursuant to authority vested in him under the Isolated Tracts Act, Rev.Stat. § 2455, as amended, 43 U.S.C. § 1171 (1958). Freeman and Ferry submitted bids on the particular tracts involved in their respective cases. In both cases they were declared by the Land Manager to be high bidder,[1] paid the bid price, and received receipts therefor.[2]

In prolonged proceedings which followed in the Freeman case, the Manager's decision that Freeman was the preferred bidder was affirmed by the Secretary, through his Solicitor, who, in his decision, declared Freeman "purchaser" of the land. After prolonged proceedings in the Ferry case, the Assistant Secretary of Interior resolved, in Ferry's favor, a challenge that the bidding was unethical,

---

1. The declaration that they were high bidders and purchasers was, in each case, made subject to a waiting period of thirty days to afford owners, if any, of contiguous land to exercise their preference right to purchase the land in accordance with the provisions of 43 U.S.C. § 1171 and 43 C.F.R. Part 250.

2. Freeman was the only bidder in her case, and at the time of the bidding paid the bid price of $39,517.00 to the Manager, who issued a receipt to her.

Ferry at the time of the bidding paid the bid sum of $32,500.00, which sum was received and receipted by the Manager.

but remanded the case to the Land Manager for further consideration.

In each case, before the cash certificate was issued, the Secretary determined that the appraisal value of the lands in question had been understated and that the true value of the land at the time the bids were received was several times higher than the bid price. On the basis of this, the Secretary entered orders vacating the sales.[3] Freeman and Ferry then instituted the actions involved in this appeal.

The numerous arguments advanced by Freeman and Ferry on this appeal present two basic issues: (1) whether Freeman and Ferry are entitled to the lands in question despite the fact that cash certificates have not been issued; and (2) whether it was an abuse of discretion, subject to review under section 10 of the Administrative Procedure Act, for the Secretary not to issue the cash certificates.

■ With regard to the first issue, we hold that Freeman and Ferry are not entitled to any property or contractual rights in the lands in question absent the issuance of the certificates. The Secretary has discretionary authority to decide whether " * * * in his judgment, it would be proper * * * " to expose for sale at public auction, for not less than appraised value, certain isolated and disconnected tracts and parcels of public land. Isolated Tracts Act, Rev.Stat. § 2455, as amended, 43 U.S.C. § 1171.

■■ The Act itself does not specify the procedure to be followed in selling these tracts. The Secretary may therefore promulgate regulations, pursuant to his general rule-making power, concerning how the sale may be had. Rev.Stat. § 2478, 43 U.S.C. § 1201.[4] The rules promulgated with regard to these sales were, at the time of the bidding, as follows:

" * * * until the issuance of a cash certificate, the authorized officer may at any time determine that the lands should not be sold, the applicant or any bidder has no contractual or other rights as against the United States, and no action taken will create any contractual or other obligation of the United States." [5]

3. In the Freeman case, on April 14, 1961, a joint decision of the Associate Director, approved by Secretary Udall, was rendered and issued vacating the sale on the ground that the then present value of the land exceeded the bid price by ten times. As a result of Freeman's petition for reconsideration of this decision, the Acting Director and Assistant Secretary on June 8, 1962, confirmed the earlier decision to vacate the sale on the grounds that the true value of the land at the time the bid was made exceeded the bid price by six times.

In the Ferry case, the Department of Interior ordered the sale to Ferry to be vacated in a decision dated February 1, 1963. The decision stated that the fair market value of the land at the date of sale was $93,500 as compared with the appraised value of $24,238.55. The fair value of the land was determined to be $155,880 as of September 4, 1962.

4. Since the Secretary has discretionary power to refuse to sell at all, he also has the authority to set any conditions, consistent with the Act, upon which the sale may be made. Cf. Southern Pacific Co. v. Olympian Dredging Co., 260 U.S. 205,

208, 43 S.Ct. 26, 67 L.Ed. 213. If the appellants did not like the system the Secretary established for entertaining bids, their remedy was that of not bidding at all. Cf. Erie Coal & Coke Corp. v. United States, 266 U.S. 518, 45 S.Ct. 181, 69 L.Ed. 417; United States v. Weisbrod, 7 Cir., 202 F.2d 629, 633.

5. This is the text of 43 C.F.R. § 250.5 as it stood at the time of the bidding, as a result of its promulgation at 19 Fed. Reg. 9116 (1954). The text was amended at 28 Fed.Reg. 1589 (1963).

One significant change in 43 C.F.R. § 250.5 made as a result of this amendment was that all public notices of sales under these regulations must now state expressly that the Government reserves a right to reject any and all bids prior to the issuance of the final certificates. The regulations prior to the amendment stated no such requirement, and the public notices in these two cases contained no such notice.

Freeman argues that the amendment reflects the Secretary's agreement with his position that this right of the Secretary to reject all bids must be stated in the public notice to be binding upon the

710

Under this procedure the Secretary, in the exercise of his discretionary authority to sell, merely invites bids from the public. The procedure established resembles an auction with reserve, since the Secretary reserves the right to reject any and all bids prior to the issuance of the certificate. See Restatement, Contracts § 27; Willcoxson v. United States, 114 U.S.App.D.C. 203, 207, 313 F.2d 884, 888.

 Freeman argues that the public notice had to state that the auction was being held with reserve, in order for these conditions to be binding upon the bidders. However, in this kind of auction, as in any other, the auction is deemed to be conducted with reserve, unless there is an express announcement or advertisement to the contrary before the auction takes place. 1 Williston, Contracts (3d ed.) § 29, pages 76–77. For this reason, even without the regulations, the Secretary had a right to reject a bid. It would be immaterial whether the bid was the high bid or whether the advertisement announcing the auction implied that the Secretary would sell to the highest bidder. See Levinson v. United States, 258 U.S. 198, 201, 42 S.Ct. 275, 66 L.Ed. 563.

 The regulations state that offers to purchase the land could be accepted only by the issuance of the cash certificate and that no other action taken would confer rights in the land upon bidders. Both appellants argue that these regulations do not apply to them since the public notice did not call their attention to the fact that the auction was being held pursuant to 43 C.F.R. § 250.5. Freeman and Ferry are bound by these regulations, however, since their publication in the Federal Register provided constructive notice. 49 Stat. 502, 44 U.S.C. § 307; Federal Crop Insurance Corp. v.

bidders. The appellee answers that the purpose of the amendment was to prevent just such an argument as this one. Since we hold that this would have been an auction with reserve even without regulations or notice, we need not consider the merits of the foregoing arguments.

Merrill, 332 U.S. 380, 384–385, 68 S.Ct. 1, 92 L.Ed. 10; Maryland Cas. Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 64 L.Ed. 297.

Two arguments advanced by the appellants are based on the presumption that some event other than the issuance of the cash certificate will constitute acceptance of their bids. The first such argument is that the obligation to sell lands became complete when the Land Manager accepted, and gave receipts for, the bid price paid by them. Appellants argue that the "general rule of real estate" applicable here is that where the applicant for a patent to public lands performs the prescribed conditions and pays the price, the equitable title thereto passes to the applicant and the United States thereafter holds mere legal title subject to a trust.

As pointed out in Willcoxson v. United States, 114 U.S.App.D.C. 203, 206–207, 313 F.2d 884, 887–888, the cases upon which the appellants rely are those involving statutes which made it mandatory for the Secretary to transfer the land to those who complied with the statutory requirements, and which limited the Secretary's discretion to that of determining that the requirements had been met.[6]

██ ██ Sale of property under the Isolated Tracts Act involves an entirely different method of disposing of public property. Under this Act, Congress has left entirely to the Secretary's discretion whether to dispose of the land or not. Accordingly, this is not a case where a member of the public can acquire parts of the public domain merely by the compliance with or paying a price. In this case, no right to the land arises until the Secretary accepts a bid by issuing a certificate.

6. The cases relied upon in this argument are Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., 145 U.S. 428, 12 S.Ct. 877, 36 L.Ed. 762, and Wyoming v. United States, 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742, both discussed later in this opinion.

The second argument along this line is that the offers of the appellants were accepted when they were declared to be "high bidder" and "purchaser." The significance of this, they argue, is that 43 C.F.R. § 250.5 is directed only to "applicants" and "bidders" and, by being designated "purchasers," they were put in a category of persons to whom the regulations do not apply. The argument overlooks the fact that 43 C.F.R. § 250.5 expressly states that bids are accepted only by the issuance of the cash certificate and that no other action "taken will create any contractual or other obligation of the United States." [7]

The result we reach is identical in principle with that of Willcoxson v. United States, 114 U.S.App.D.C. 203, 313 F.2d 884. Freeman, however, seeks to distinguish the Willcoxson case from the one before us. First, he argues, the Secretary decided not to sell in Willcoxson because minerals were discovered on the land after the bids were made, because there were adverse claimants to the land and issuance of the certificate would have resulted in litigation, and because there were irregularities in the application, whereas in this case, the Secretary refused to sell because the bid price was less than the actual value of the land. In our view, however, the difference in reason given for refusing to sell is no basis for distinguishing the cases, since the Secretary, in his discretion, may refuse to sell for whatever reason he finds adequate.

Second, Freeman argues, the cases are distinguishable because the relief sought in Willcoxson, was "in the nature of mandamus and under the Tort Claims Act," while in this case relief is sought under the Administrative Procedure Act. However, whether or not there is a binding obligation to sell the land prior to the issuance of the cash certificate is a question of substantive law, the answer to which will be the same without regard to what procedure is used to raise the question.

For these reasons we agree with Willcoxson v. United States, 114 U.S.App. D.C. 203, 313 F.2d 884, and hold that the appellants are not entitled to the lands in question absent issuance of the certificate.

With regard to the second issue raised on this appeal, we hold that the Secretary's refusal to issue these certificates is not subject to judicial review. The Isolated Tracts Act commits the decision to sell to the Secretary's discretion. Under the regulations adopted to administer the Act, the Secretary reserved the right to exercise that discretion any time before a bid had been accepted by the issuance of the cash certificate. Since section 10 of the Administrative Procedure Act [8] prohibits judicial review of agency action " * * * by law committed to agency discretion * * *," we are without power to review the Secretary's decision in this case.

We recognize the intrinsic difficulty in determining whether a discretionary action of an agency is reviewable. Almost every agency action involves some degree of discretion of judgment. Yet it cannot be said that, for this reason, every agency action is unreviewable. Homovich v. Chapman, 89 U.S.App.D.C. 150, 153, 191 F.2d 761, 764. The analytical problem is that of determining when the agency action is "committed to agency discretion" within the meaning of section 10 of the Administrative Procedure Act, and when it merely "involves" discretion which is nevertheless reviewable. 4 Davis, Administrative Law Treatise § 28.16, pp. 80–81; Anno., Administrative Procedure Act, 97 L.Ed. 884, 889.

Our decision that the Secretary's decision is "committed" to his discretion is consistent with Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct.

7. Similarly, neither the issuance of a receipt for the bid price paid, nor the subsequent affirmation of the Manager's declaration by the Assistant Secretary or the Secretary of Interior amounted to an acceptance of the bids.

8. 60 Stat. 243, 5 U.S.C. § 1009.

752, 2 L.Ed.2d 788. There it was held that the courts could not review toll rates set by the Panama Canal Company because toll adjustments were a matter left to the discretion of the Company. It was determined that this decisional process was committed to the Company's discretion because it involved " * * * matters on which experts may disagree; they involve nice issues of judgment and choice, * * * which require the exercise of informed discretion." (356 U.S. at 317, 78 S.Ct. at 757, citations omitted) Similarly, a decision of whether or not it would be in keeping with sound policy to sell a particular parcel of land at a certain offered price involves the exercise of informed discretion.

That the case of Panama Canal Co. v. Grace Line, Inc., supra, is analogous in principle with the instant case is confirmed by the fact that in Panama (356 U.S. at 317, 78 S.Ct. 752) the Court relied upon its former decision of United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 51 S.Ct. 502, 75 L.Ed. 1148. It was in this earlier case that the Court, in considering the reviewability of land disposal decisions of the Secretary of Interior, drew "the distinction between a positive mandate to the Secretary and permission to take certain action in his discretion." (283 U.S. at 418, 51 S.Ct. at 504) It was decided that the courts could not, by writ of mandamus, review a decision of the Secretary denying applications for permits to prospect for oil and gas under section 13 of the Mineral Leasing Act of 1920 because that section was permissive in nature.[9]

 The necessary implication is that courts may not review a decision committed to the Secretary's discretion pursuant to a "permissive type" statute, while they may do so where the decision was made pursuant to a "mandatory type" statute, even though the latter decision involves some degree of discretion.

Although Wilbur is distinguishable on the ground that it was decided before the Administrative Procedure Act was enacted, the decision in Panama Canal Co. v. Grace Line, Inc., supra, indicates that the rules governing the reviewability of the Secretary's discretionary decisions by writ of mandamus obtain equally when review is attempted under section 10 of the Administrative Procedure Act.

It is just this distinction drawn in the Wilbur decision that differentiates the instant case from two categories of cases relied upon by the appellants. The first category of cases concerns application for patents covering mineral claims pursuant to the Mineral Locations Law of 1872, Rev.Stat. §§ 2318–2326, as amended, 30 U.S.C. §§ 21–30.[10] The Act makes mandatory the granting of estates to those who locate mineral claims in the public domain, conditioned upon the compliance by the locator with statutory requirements.[11] The discretion of the Secretary

---

9. The text of section 13 of the Mineral Leasing Act as it stood upon the date of the Wilbur decision can be found at 41 Stat. 441. The section was thereafter amended and expired by the terms of that amendment. Act of August 21, 1935, 49 Stat. 674.

10. The cited cases include Best v. Humboldt Placer Mining Co., 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350; Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659; Adams v. Witmer, 9 Cir., 271 F.2d 29. Additionally cited is Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., 145 U.S. 428, 12 S.Ct. 877, 36 L.Ed. 762, which involves an interpretation of this Act.

11. Some salient features of the Act are that all valuable mineral deposits in the lands of the United States are open to exploration and purchase (Rev.Stat. § 2319 as amended 30 U.S.C. § 22), that the Government, in effect, grants the right to present and exclusive possession to the surface, as well as to the minerals below the surface, to locators of minerals below the surface, to locators of mineral claims (Rev.Stat. § 2322, 30 U.S.C. § 26); and that the locator of mineral claims may proceed to obtain a patent according to specified procedures (Rev. Stat. § 2325 as amended 30 U.S.C. § 29). See United States v. Rizzinelli, D.Idaho, 182 Fed. 675, 681.

is limited to deciding whether these requirements have been met. Judicial review of the Secretary's decision in this matter is available, since it would be anomalous to allow a locator to lose rights, the conferring of which is made mandatory by the applicable statute, merely because authorized personnel in the Department of Interior made erroneous or arbitrary decisions concerning the locator's compliance with the law. See Adams v. Witmer, 9 Cir., 271 F.2d 29, 34.

The second category involves a case construing two statutes concerned with the admission of Wyoming to statehood. Wyoming v. United States, 255 U.S. 489, 41 S.Ct. 393, 65 L.Ed. 742. In substance, the statute granted Wyoming the right to select certain sections of the public domain for support of that state's common schools. The state made a selection in accordance with the statutes. Years later the General Land Office attempted to cancel the selections. The Supreme Court held that the statutes constituted an offer to Wyoming, the compliance with which became mandatory once the state accepted the offer in accordance with the statutes. The discretion of the Department of Interior was limited solely to determining whether the statutory conditions had been met. The Court decided that the Secretary had erred in attempting to cancel the selections, and affirmed a district court decision favorable to the state's claim of title.

But, argues Ferry, section 17 of the Mineral Leasing Act, as amended, 74 Stat. 782, 30 U.S.C. § 226, is a permissive, rather than a mandatory type statute, and yet there are cases judicially reviewing the granting and denying of non-competitive oil and gas leases under that section.

While the pertinent part of that section uses mandatory language to state that the first qualified applicant for an oil or gas lease not within a known geological structure, of a producing field "shall be entitled" to a preference right without competitive bidding,[12] the entire section uses the permissive language that lands known or believed to contain oil or gas "may be leased" by the Secretary. For this reason, it has been held that the denying of lease applications under this section is a matter of the Secretary's discretion and not subject to correction by judicial review. United States ex rel. Roughton v. Ickes, 69 App.D.C. 324, 101 F.2d 248. Similarly, it has been held that an applicant for a non-competitive lease obtains no vested rights until the Secretary in his discretion accepts the application. Haley v. Seaton, 108 U.S.App.D.C. 257, 281 F.2d 620.

The cases which Ferry cites in this connection do not involve review of the exercise of discretion not to accept lease applications under this section. The review has been limited solely to determining whether, once the Secretary decided to accept leases, the leases were granted to the proper applicants in accordance with the mandatory language of the statute and applicable regulations.[13] See Barash v. Seaton, 103 U.S.App.D.C. 159, 256 F.2d 714; Seaton v. Texas Co., 103 U.S. App.D.C. 163, 256 F.2d 718; McKay v. Wahlenmaier, 96 U.S.App.D.C. 313, 226 F.2d 35. Additionally courts entertain suits to determine whether the regulations promulgated to administer the Act are consistent with the mandatory requirements of the Act. See Thor-Westcliffe Development Inc. v. Udall, 114 U.S. App.D.C. 252, 314 F.2d 257; Safarick v. Udall, 113 U.S.App.D.C. 944, 304 F.2d 944.

---

12. The pertinent part of section 17 of the Mineral Leasing Act was added by 49 Stat. 676, amended 60 Stat. 951, and amended 74 Stat. 782.

13. Although section 17 is a permissive statute, it was observed in McKay v.

Wahlenmaier, 96 U.S.App.D.C. 313, 317, 226 F.2d 35, 39, that "[s]ection 17 is mandatory in directing that a lease be issued to the person (a) who first makes application and (b) who is qualified under certain other sections of the Act to hold a lease."

There is a further argument. Under the Mineral Leasing Act, it is contended, the unreviewable discretionary authority of the Secretary is exhausted when he decides to accept noncompetitive oil and gas lease applications; thereafter his acts are subject to review. In the same way, it is urged, the unreviewable discretion of the Secretary is exhausted when he decides to expose certain isolated tracts for sale, and any decision he makes thereafter is reviewable for abuse of discretion.

 Appellants' understanding of the Mineral Leasing Act is correct insofar as, once the Secretary has decided to accept lease applications, the Act makes mandatory the granting of the lease to the first qualified applicant without competitive bidding. But the argument with regard to the scope of the Secretary's discretion under the Isolated Tracts Act is faulty. It overlooks the fact that there is nothing in the Act or regulations which makes the accepting of any bid mandatory after the decision to expose the land for sale or to invite bidding is made. For this reason, the Secretary's discretion under the Isolated Tracts Act, unlike his discretion under the Mineral Leasing Act, extends until such time as he accepts in accordance with the regulations some bid made on a parcel of land designated for sale.

 Ferry argues that due process of law requires that he at least be given a hearing on the issue of the fairness of the original appraisal. Since the Secretary announced that he rejected Ferry's offer because it was less than the actual value of the land when the bids were made, Ferry argues that he ought to have an opportunity to demonstrate the error of this determination in a trial-like procedure. We know of no provision in the Isolated Tracts Act that requires such a hearing. Furthermore, there is no constitutional requirement to a right to a hearing where only a potential privilege to purchase United States land is involved.

Affirmed.