NESS INVESTMENT CORPORATION, and Canyon Lake Resort, Inc., Appellants,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, FOREST SERVICE, and Fred Wirth, Forest Supervisor, Appellees.

No. 73-2415.

United States Court of Appeals, Ninth Circuit.

Feb. 21, 1975.

John C. Hughes (argued), Hughes, Hughes & Conlan, Phoenix, Ariz., for appellants.

Carl Strass and Terrence L. O'Brien (argued), Lands & Natural Resources Div., U.S. Dept. of Justice, Washington, D. C., for appellees.

Before WRIGHT and SNEED, Circuit Judges, and LINDBERG, District Judge.*

## OPINION

LINDBERG, Senior District Judge.

This appeal presents the question whether a federal court may review a refusal by the Department of Agriculture, Forest Service (forest service), to issue a special use permit to a so-called successor group of investors for operation of a resort in a national forest. The successor group of investors has appealed from an order of the district court[1] granting the forest service's motion to dismiss for want of jurisdiction. We affirm for the reasons expressed below.

### I.

On May 18, 1965, the forest service issued[2] a twenty year special use permit[3] to the Ness Investment Corpora-

---

* Honorable William J. Lindberg, Senior United States District Judge, Western District of Washington, sitting by designation.

1. The March 26, 1973, order of the district court is reported as Ness Investment Corp. v. United States, Department of Agr., Forest Service, 360 F.Supp. 127 (D.Ariz.1973).

2. The issuance of term special use permits is authorized in 16 U.S.C. § 497 (1970) which provides in part:

> The Secretary of Agriculture is authorized, under such regulations as he may make and upon such terms and conditions as he may deem proper, (a) to permit the use and occupancy of suitable areas of land within the national forests, not exceeding eighty acres and for periods not exceeding thirty years, for the purpose of constructing or maintaining hotels, resorts, and any other structures or facilities necessary or desirable for recreation, public convenience, or safety. . . . The authority provided by this section shall be exercised in such manner as not to preclude the general public from full enjoyment of the natural, sce-

nic, recreational, and other aspects of the national forests.

3. Regulations governing the issuance of term special use permits have been promulgated. 36 C.F.R. §§ 251.1 et seq. (1973). Pertinent portions of those regulations are set forth below:

> § 251.1
>
> (a) *Special uses.* (1) All uses of national forest lands, improvements, and resources, including the uses authorized by . . . 16 U.S.C. 497, . . . and excepting those provided for in the regulations governing the disposal of timber and the grazing of livestock or otherwise specifically authorized by acts of Congress, shall be designated "special uses," and shall be authorized by "special use permits." . . .
>
> (b) *Special Use Permits.* (1) Special use permits shall be issued by the Chief of the Forest Service or, upon authorization from him, by the regional forester, forest supervisor, or forest ranger, except as herein provided, and shall be in such form and contain such terms, stipulations, conditions and agreements as may be required by the

tion (NIC), an Arizona corporation. The permit authorized NIC, subject to numerous terms and conditions, to construct, operate and maintain a resort at Canyon Lake in the Tonto National Forest, approximately forty-six miles east of Phoenix, Arizona. Among the duties imposed upon NIC through the permit were: keeping a responsible management official on the site or immediately available; providing a sanitation system and related facilities; constructing roads, parking lots, buildings, water systems, a sewage disposal system and a gas storage system; meeting a schedule for development of the site and for installation of the enumerated facilities. It was the opinion of the forest service that NIC was not fully discharging its permit responsibilities, and on May 3, 1968, the regional forester attempted to revoke the permit. The board of forest appeals, in an order filed on July 24, 1969, held this attempt to have been ineffective.

Subsequently, in a letter dated September 24, 1969, the regional forester requested NIC to show cause why the per-

mit should not be revoked. Through a memorandum of October 16, 1969, Berth C. Ness, chief executive officer of NIC, authorized William H. O'Brien to handle all negotiations with the forest service pertaining to the permit. On October 22, 1969, O'Brien wrote to the forest supervisor and noted only the following points: NIC had merged with a group of investors with experience in the resort business; arrangements had been made to satisfy most of the claims outstanding against improvements on the resort site; development and operation of the site had been prohibited by the forest service for two years; the bond securing the permit then remained in effect; with new management the terms and conditions of the permit could be met. The record does not reveal that any NIC response to the request to show cause was forthcoming. On May 4, 1970, the chief of the forest service revoked the permit by letter; the letter was sent to Berth C. Ness at his business address in Minnesota. The revocation was based upon the failure of NIC to comply with the terms of the permit. An appeal was filed.[4]

regulations of the Secretary of Agriculture and the instructions of the Chief of the Forest Service.

(2) Special use permittees shall comply with all State and Federal laws and all regulations of the Secretary of Agriculture relating to the national forests and shall conduct themselves in an orderly manner.

(3) A special use permit may be terminated with the consent of the permittee, or because of nonpayment of fees, by the officer by whom it was issued or his successor, but may be revoked or cancelled only by the Secretary of Agriculture or by an officer of the Forest Service superior in rank to the one by whom it was issued, except that a term permit may be revoked only for breach of its terms or violation of law or regulation. Appeals from action relating to special use permits may be made as provided in § 211.2 of this chapter.

(4) A special use permit may be transferred with the approval of the issuing forest officer, his successor or superior. . . .

§ 251.3 (a) Special use permits, except as otherwise provided in this section or § 251.2, or specifically authorized by the Secretary of Agriculture, shall require the payment of a fee or charge commensurate with the value of the use authorized by the

permit, the amount of which shall be prescribed by the Chief of the Forest Service.
. . .

4. Regulations governing appeals have been promulgated. 36 C.F.R. § 211.20 et seq. (1973). Pertinent portions of those regulations are set forth below:

§ 211.20(a) Classification. This subpart prescribes the procedure governing the following types of appeals:

(1) Class One. Appeals from decisions in which the issue under appeal relates to a breach of the terms or provisions of a written instrument, as defined in § 211.29. To be classified as a Class One appeal, the appeal must be taken by a party or parties to the written instrument. . . .

§ 211.21

(a) Procedure. Any person who is adversely affected by a decision of a forest supervisor, except a decision denying an application for a special use permit, contract or any use of the national forests, may take an appeal to the regional forester by filing with the forest supervisor, within the time specified in § 211.30, a written notice of appeal and a written statement setting forth the reasons why the decision appealed from is contrary to, or in conflict

As a point of information, the involvement of O'Brien with the resort originally planned by NIC arose from O'Brien's apparent status as an NIC creditor and from the following series of events. Berth C. Ness and O'Brien entered into an agreement on January 9, 1969. Under the agreement, the First Southwest Small Business Investment Corporation (FSSBIC), of which O'Brien was then president, would receive title to all of the physical assets at Canyon Lake belonging to NIC. The agreement was subject to the condition both that the forest service approve transfer of the NIC permit and that financing be available. Preferred stock in the amount of $80,000.00 in a corporation to be organized by O'Brien was to have been issued to NIC in consideration for the transfer; in addition, FSSBIC was to have assumed all of the liabilities of NIC. A bill of sale dated November 1, 1969, evidenced the fact that NIC had conveyed all of its assets located at Canyon Lake to Canyon Lake Resort, Inc. (CLR). The bill of sale was executed pursuant to the January 9, 1969, agreement. It appears that this agreement and transfer were executed in settlement of a legal action; for a state court in Arizona has adjudged that, at the time of the decree, FSSBIC held title to all of the improvements at Canyon Lake in which NIC had had an interest. First Southwest Small Business Investment Corp. v. Dick B. Roach and Jane Doe Roach, Berth C. Ness and Jane Doe Ness, and Ness Investment Corp., No. 21015, (Superior Court, Pinal County, Arizona, January 27, 1970).

By telegram dated January 15, 1970, O'Brien notified the regional forester that, as a result of court action in lieu of foreclosure, the November 1, 1969, bill of sale had been issued, and that FSSBIC had later assigned the assets to CLR. In a February 4, 1970, letter FSSBIC notified the forest supervisor of the January 27, 1970, judgment and made application for a transfer of the permit to CLR. The forest supervisor in a letter of March 16, 1970, denied the application for transfer of the permit; the forest supervisor felt that clause twelve of the

with, the facts, the law, or the regulations of the Secretary of Agriculture, hereinafter referred to as the "Secretary," or is otherwise in error. . . . § 211.22 (b) *Merits*—(1) Appeal. Any person who is adversely affected by a decision of a regional forester may take an appeal on the merits to the Board by filing with the Board, within the time specified in § 211.30, a written notice of appeal and statement of reasons prepared in accordance with the procedure provided for in § 211.21. If the appellant desires to appear or be represented at a hearing before the Board, the notice shall contain a request that a hearing be held. . . .

§ 211.24
(a) *Request for hearing.* A hearing before the Board in a Class One or Class Two case shall be a matter of right, if requested by the appellant as provided for in § 211.22. If a hearing is not so requested by the appellant, and the statement of the forest officer whose decision is appealed, namely, the regional forester or the Chief, contains a request for a hearing, the Board shall proceed to hold a hearing. If such request is not made by either the appellant or the forest officer, the Board may in its own discretion hold a hearing. . . .

§ 211.25
(a) *Class One cases, decisions.* The Board shall make decisions in appeals arising under Class One which shall be final, conclusive and binding on the parties thereto, except as they may be subject to review as provided by law. . . .
§ 211.27
(a) *Initial decisions of Chief.* Any person who is adversely affected by an initial decision of the Chief may take an appeal to the Board in the manner provided for in § 211.22. . . .
§ 211.101
This subpart implements Subpart B of this part, "Appeals from Administrative Decisions Relating to the Administration of the National Forest or other lands under the Administration of the Forest Service," by providing rules of procedure to be followed in proceedings before the Board of Forest Appeals. . . . There are excluded from the application of the subpart: . . . (c) appeals where the relief sought is the reversal or modification of a decision denying an application for a special use permit, contract, or any use of the national forests. . . .

NIC permit[5] prohibited its transfer. In a letter written on April 10, 1970, O'Brien writing for FSSBIC, applied under clause twelve for a permit in favor of CLR. In that letter O'Brien again stated that FSSBIC had had title to the NIC assets and had transferred them to CLR. On January 29, 1971, O'Brien executed an assignment transferring all the physical assets at Canyon Lake from FSSBIC and CLR to NIC.

Beginning on January 27, 1971, a hearing was held before the board of forest appeals concerning the May 4, 1970, revocation of the NIC permit. After the hearing a decision, of which no review has been sought, was rendered and an opinion was issued. In re: Ness Investment Corporation, Forest Service Docket No. 134 (November 4, 1971). The decision of the board of forest appeals was summarized at the conclusion of the opinion as follows. In re: Ness Investment Corporation, *supra,* pp. 11–12:

> The decision of the Chief, Forest Service, is correct in that there are substantial breaches of the conditions of the special use permit issued to Ness Investment Corporation which warrant action to revoke the permit. However, before final revocation action, the Forest Service is directed to allow the O'Brien group to file an application under clause 12 of the permit setting forth the necessary facts and proof of ownership of physical assets at Canyon Lake. Such application shall be filed with the Forest Service not later than 60 days from the date of issuance of this decision, or within such additional time as the Chief of the Forest Service may grant for such purpose. Upon receipt of an application from the O'Brien group, timely filed, the Forest Service shall consider the application and determine whether the applicant is qualified under the criteria specified in clause 12 of the permit and any applicable standards prescribed by Regulation or the Forest Service Manual. If it is determined that the applicant is qualified and that a permit will be issued to the applicant, such action by the Forest Service will terminate this appeal. If, on the other hand, it is determined that the applicant is not qualified or is unwilling to accept such reasonable conditions as may be prescribed by the Forest Service for the issuance of such a permit or for inclusion in the terms of the permit, the permit of Ness Investment Corporation shall be revoked finally as of the date of the notice to the O'Brien group and Ness Investment Corporation by the Forest Service of such determination.[6]

5. Clause twelve of the special use permit provides:

> This permit is not transferable. If the permittee through voluntary sale or transfer, or through enforcement of contract, foreclosure, tax sale, or other valid legal proceeding shall cease to be the owner of the physical improvements other than those owned by the United States situated on the land described in this permit, and is unable to furnish adequate proof of ability to redeem or otherwise reestablish title to said improvements, this permit shall be subject to cancellation. But, if the person to whom title to said improvements shall have been transferred in either manner above provided is qualified as a permittee, and is willing that his future occupancy of the premises shall be subject to such new conditions and stipulations as existing or prospective circumstances may warrant, his continued occupancy of the premises will be authorized by a permit to him, which may be for the unexpired term of this permit or for such new period as the circumstances justify.

6. Pertinent sections of the forest service manual provide:

> § 2712.
> No Forest officer may refuse to receive an application. He may approve it or disapprove it, however, based on law, regulation, policy or merit.
> § 2716.1. *Change in Ownership.* Although 36 CFR 251.1 (reg. U–10) provides that special-use permits may be transferred, it is not the policy to do so. Upon sale and transfer of the improvements covered by a special-use permit, the permit terminates. A new permit will be issued to the person to whom title to the improvements has been transferred, provided continuation of the use is desirable. The new permit will be issued only upon application by the new owner and after proof that he is the legal owner of the improvements. The new per-

Explication of the view of clause twelve taken by the board of forest appeals in its decision was included in the body of the opinion. In re: Ness Investment Corporation, *supra*, pp. 10–11:

Clause 12 of the permit specifically provides that a successor-in-interest to the permittee's improvements who is determined to be qualified as a permittee will be issued a permit subject to such new or additional conditions as the circumstances may warrant. . .
It is the view of the Board that the O'Brien group has attempted to exercise the rights of a successor-in-interest to the permittee with the status granted it under clause 12 of the permit, and that, on application of such a successor, the Forest Service should decide whether it is or is not qualified to succeed to the permit "subject to such new conditions and stipulations as existing or prospective circumstances may warrant. . . ." The Board is not persuaded that the failure of the Ness Investment Corporation to perform the terms of the permit or the pendency of its appeal from the revocation action of the Chief of the Forest Service is any bar to consideration by the Forest Service of the application of the O'Brien group for a successor's permit pursuant to clause 12 of the existing permit. A reading of clause 12 of the permit suggests that it was intended to be utilized to permit a "salvage operation" of the type proposed by the O'Brien group. Our statements herein relative to clause 12 of the permit should not be taken to mean that the Forest Service is required to issue a permit to the O'Brien group but only that the O'Brien group is entitled to the consideration to be afforded a potential successor-in-interest under clause 12 of the permit.

On January 3, 1972, CLR filed an application for a special use permit. The application was denied by the forest supervisor in a letter dated February 7, 1972. Among the reasons given by the forest supervisor for denying the application were these: CLR had failed satisfactorily to show ownership of the improvements at the lake; the development plans submitted with the application were inadequate; the financial capacity of CLR was not demonstrated, although the application was accompanied by financial data concerning FSSBIC; the settlement of debts outstanding against the improvements had not been accomplished; a schedule establishing the sequence for construction of further improvements had not been submitted. On March 21, 1972, NIC, seeking review of the adverse decision of the forest supervisor, filed a motion for continuance of appeal with the board of forest appeals. This motion was denied because the board of forest appeals did not have jurisdiction to hear an appeal from the denial of an application for a special use permit. In re: Ness Investment Corporation, Forest Service Docket No. 134 (June 23, 1972).

## II.

On May 11, 1972, NIC and CLR had sought an injunction in the district court preventing the forest service from calling for new bids for construction of a resort at Canyon Lake and preventing the forest service from impounding the FSSBIC assets located upon the site. Pending resolution of the motion before the board of forest appeals for continuance of appeal, the district court had entered the requested injunctive order. The injunctive order was issued over the jurisdictional objections of the forest service. After a supplemental complaint was filed on September 18, 1972, the forest service again raised its jurisdictional point and moved to dismiss the action. This motion was granted by the district court.

The essential claims made in the original and supplemental complaints were: the forest service unreasonably, arbitrar-

mit will contain any new conditions or stipulations which circumstances may warrant. § 2716.12. *Review Before Reissuance.* . . . Purchasers of permitted conces-

sion operations must meet the same applicant qualifications as applicants for new concessions.

ily and capriciously denied the January 3, 1972, application of CLR. In support of these claims, NIC and CLR have suggested that, in rejecting the application, the forest supervisor ignored the November 4, 1971, decision of the board of forest appeals, failed to comply with pertinent statutes and regulations and with the provisions of the forest service manual and clause twelve of the original NIC permit, and improperly found the applicant to be unqualified to receive a special use permit.[7] To these assertions and to the prayer for relief the court below expectably responded, Ness Investment Corp. v. United States Dept. of Agr., Forest Service, 360 F.Supp. 127, 128 (D.Ariz.1973):

It appears that plaintiffs seek to have the Court conduct a de novo hearing and find facts; and further, not only review the rejection of the application for a special use permit by Canyon Lake Resorts, Inc., but to usurp the powers of the Forest Service and judicially set conditions and terms for a use permit at Canyon Lake and make a factual determination whether Canyon Lake Resorts fulfilled those conditions. Thus, what the plaintiffs are asking of the Court is to be architect, planner, engineer, conservationist, water recreation expert, financier, etc.,

all rolled into one in setting such conditions. The Federal Courts have no jurisdiction and no expertise to set such conditions and terms for a use permittee.

### III.

In treating the question of the district court's jurisdiction to review, we must treat separately the two types of allegations put forward in support of the claims of NIC and CLR. After some rather lengthy preliminaries, we will first treat the allegation that the forest supervisor improperly found CLR to be unqualified to receive a special use permit. We will then treat the allegations that the forest supervisor acted in contravention of the November 4, 1971, decision of the board of forest appeals and that the forest supervisor failed to comply with statutes, regulations, provisions of the forest service manual, and clause twelve of the NIC permit.

Judicial review of administrative action is governed by the Administrative Procedure Act (APA).[8] Two sections of that enactment, and their interaction, are of interest here: the section treating preclusion of review of agency action "committed to agency discretion by law;"[9] and the section treating review of agency action found to be "an abuse of discretion."[10] The inclusion of both of these provisions in the APA has

7. The issue of impoundment adverted to in the complaints has been made the subject of a separate action brought by NIC and CLR in the District of Arizona. Consequently, we do not reach that issue in the present opinion. The propriety of the forest service's revocation of the NIC permit has been touched upon in the prayer for relief and in the briefs. It appears that, throughout the pendency of this action, the concern of NIC and CLR has been with little else other than the bar to a CLR salvage operation created by the denial of the January 3, 1972, application for a permit. In fact, in their May 11, 1972, complaint seeking an injunction, NIC and CLR state at page two that they "have not appealed the decision of the Board of Forest Appeals dated November 4, 1971, and do not question the discretion of the Board which has been exercised in such decision." It was, of course, that decision of the Board of forest appeals which approved the revocation of the NIC permit. NIC and CLR cannot seriously deny, and the record appears to support, the conclusion that condi-

tions of the NIC permit had been breached. Moreover, it seems that NIC was and remains in no financial condition to be able to go forward with performance of its duties under its permit. Therefore, we do not reach the permit revocation issue in the present opinion.

8. 5 U.S.C. § 701 et seq. (1970).

9. 5 U.S.C. § 701 (1970). That section provides in part:

(a) This chapter applies, according to the provisions thereof, except to the extent that—
(1) statutes preclude judicial review; or
(2) agency action is committed to agency discretion by law. . . .

10. 5 U.S.C. § 706 (1970). That section provides in part:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and

sparked confusion by presenting the question whether action that may have been committed to agency discretion by law should still remain reviewable for abuse of discretion. Commentators and courts have disagreed.[11] The claims presented to the court below and the decision rendered there require us, once again, to attempt an answer to this question.

In the opinion in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971) 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the following statement appears:

> . . . [T]he Secretary's decision here does not fall within the exception for action 'committed to agency discretion.' This is a very narrow exception. Berger, Administrative Arbitrariness and Judicial Review, 65 Col.L.Rev. 55 (1965). The legislative history of the Administrative Procedure Act indicates that it is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' . . .

In Overton Park, the Secretary of Transportation had authorized the use of public funds for construction of a highway through a 342-acre city park in central Memphis, Tennessee. The secretary's action was challenged as in contravention of the Department of Transportation Act of 1966, as amended,[12] and of the Feder-

al-Aid Highway Act of 1968.[13] These enactments prohibited the use of federal funds to finance construction of highways through public parks if a "feasible and prudent" alternative existed. Plainly, in Overton Park, there was law to apply; and review was warranted.

On several occasions decisions in this circuit concerning the "committed to agency discretion" exception have been rendered and have employed the rubric from Overton Park set forth above. See, e. g., National Forest Preservation Group v. Butz, 485 F.2d 408 (9th Cir. 1973), where review was permitted of the question whether an agency complied with specific statutory limitations on its authority. Moreover, opinions handed down in this circuit both pre- and post-Overton Park have suggested that allegations of arbitrary action or abuse of discretion warrant review, the "committed to agency discretion" exception notwithstanding. Reece v. United States, 455 F.2d 240 (9th Cir. 1972); Sugarman v. Forbragd, 405 F.2d 1189 (9th Cir. 1968), cert. denied, 395 U.S. 960, 89 S.Ct. 2103, 23 L.Ed.2d 747 (1969). In Reece jurisdiction was found to review a claim that a certain regulation required the plaintiff's promotion; in Sugarman the court found no jurisdiction to review a claim that an agency wrongfully excluded from import certain coffee beans, and the court noted that arbitrary and capri-

---

determine the meaning or applicability of the terms of an agency action. The reviewing court shall— . . .
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
> (A) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law; . . . ..
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

**11.** For a suggestion that action committed to agency discretion is unreviewable, even where abuse of discretion may have been alleged, see, e. g.: Sierra Club v. Hickel, 467 F.2d 1048 (6th Cir. 1972), cert. denied, 411 U.S. 920, 93 S.Ct. 1545, 36 L.Ed.2d 313 (1973); Knight Newspapers, Inc. v. United States, 395 F.2d 353 (6th Cir. 1968); Ferry v. Udall, 336

F.2d 706 (9th Cir. 1964), cert. denied, 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965); 4 K. Davis, Administrative Law Treatise § 28.16 (1958, Supp. 1965); Saferstein, Nonreviewability: A Functional Analysis of "Committed to Agency Discretion," 82 Harv.L.Rev. 367 (1968). For a suggestion of the contrary proposition, see, e. g.: Littell v. Morton, 445 F.2d 1207 (4th Cir. 1971); Jones v. Freeman, 400 F.2d 383, 390 n. 9 (8th Cir. 1968); Wong Wing Hang v. Immigration and Naturalization Service, 360 F.2d 715 (2nd Cir. 1966) (Friendly, J.); Ozbirman v. Regional Manpower Admin., U.S. Dept. of Labor, 335 F.Supp. 467 (S.D.N.Y.1971); L. Jaffe, Judicial Control of Administrative Action (1965); Berger, Administrative Arbitrariness: A. Synthesis, 78 Yale L.J. 965 (1969).

**12.** 49 U.S.C. § 1653 (1970).

**13.** 23 U.S.C. § 138 (1970).

cious action in making an inspection or refusing to accept its results, clearly lacking in the agency action in *Sugarman,* might have required review.

But in the past, this circuit has also taken the position that review for abuse of discretion will not be undertaken where action has been committed to agency discretion. *Ferry v. Udall,* 336 F.2d 706 (9th Cir. 1964), cert. denied, 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965). In *Ferry* the court held that a decision of the Secretary of the Interior not to issue a cash certificate evidencing acceptance of an offer to purchase public land was not subject to review for abuse of discretion, because the decision to sell land was committed to agency discretion.[14]

These lines of cases may be rationalized by focussing on the type of question for which review was sought, rather than by focussing on ritualized allegations[15] of arbitrary and capricious agency action. In considering the "committed to agency discretion" exception to review, this circuit has been, upon a proper showing, inclined to find jurisdiction to review allegations that an agency has abused its discretion by exceeding its legal authority or by failing to comply with its own regulations; but this circuit has not been quick to approve review of allegations that an agency abused its dis-

cretion merely by deciding an issue, involving agency expertise, adversely to a complaining party. This approach accords with the suggestion of the Supreme Court in *Overton Park* that review is required where there is law to apply. And it finds support in the decisions in United States v. George S. Bush and Co., 310 U.S. 371, 60 S.Ct. 944, 84 L.Ed. 1259 (1940) and Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958).

Much light has been shed on the subject of agency action committed to agency discretion by the opinion in Scanwell Laboratories, Inc. v. Shaffer, 137 U.S. App.D.C. 371, 424 F.2d 859 (1970) (Tamm, J.). In *Scanwell* the court held that review of a decision by an agency to award a contract, which decision was allegedly in violation of certain statutes and regulations, was not precluded by the "committed to agency discretion" exception of the APA. It is stated in the opinion, 424 F.2d at 874ff.:

> . . . [T]here is a 'general rule that official administrative action is reviewable in courts when a person claims injury from an act taken by a government official in excess of his powers.' . . . [I]t is incontestable that many areas of government contracting are properly left to administrative discretion; the courts will not

---

**14.** It was in the opinion in *Ferry* that a test to aid in determining when agency action was so committed to agency discretion as to prevent review was set forth; 336 F.2d at 712:

> The necessary implication is that courts may not review a decision committed to the [agency's] discretion pursuant to a 'permissive type' statute, while they may do so where the decision was made pursuant to a 'mandatory type' statute, even though the latter decision involves some degree of discretion.

This test has at times been quoted and used without reference to its context in order to achieve an oversimplification of the determination whether action is committed to agency discretion. This is unfortunate for factors in addition to the language of a given statute must often be considered in making the determination. Barlow v. Collins, 397 U.S. 159, 165, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Rockbridge v. Lincoln, 449 F.2d 567 (9th Cir.

1971); Environmental Defense Fund, Inc. v. Hardin, 138 U.S.App.D.C. 391, 428 F.2d 1093 (1970).

**15.** To a great extent the problem we discuss here is one of words. Drafters of complaints seeking review of administrative action overwork the language of 5 U.S.C. § 706(2)(A) pertaining to action "arbitrary, capricious, [and] as abuse of discretion" when the language of (A) pertaining to action "not in accordance with law," or that of (C) and (D) pertaining, respectively, to action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" and to action "without observance of procedure required by law" might better describe the problem with which the complaint is concerned. By pleading under the suggested language of the statute, a complainant avoids, at least semantically, raising the abuse of discretion-committed to agency discretion conundrum.

invade the domain of this discretion, but neither can the agency or official be allowed to exceed the legal perimeters thereof. Contracting officials can exercise discretion upon a broad range of issues confronting them; they may not, however, opt to act illegally. When the bounds of discretion give way to the stricter boundaries of law, administrative discretion gives way to judicial review. The regulations of the [agency] have the force of law. . . . The procurement regulations also have the force of law. . . . When a prima facie showing of the violation of those regulations has been made the agency may not be heard to say that the matter in question has been left to its discretion. . . . [The defendant] . . . is incorrect in his reliance on the argument that the nature of the decisions to be made in the federal procurement process places determinations made therein beyond the scope of judicial review. The argument is made that these determinations necessarily involve 'questions of judgment requiring close analysis and nice choices,' . . . which cannot be judicially reviewed. . . The brief [of the defendant] goes on to cite in the margin the words of Mr. Justice Frankfurter . . . to the effect that disputes involved in such cases do 'not present questions of an essentially legal nature in the sense that legal education and lawyers' learning afford peculiar competence for their adjustment.' In the current case the questions presented go precisely to the legality of the administrative action; the courts are more 'peculiarly competent' to decide such questions than any one else.

■ Thus we face the following alternative propositions: Where consideration of the language, purpose and history of a statute indicate that action taken thereunder has been committed to agency discretion: (1) a federal court has jurisdiction to review agency action for abuse of discretion when the alleged abuse of discretion involves violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions; (2) but a federal court does not have jurisdiction to review agency action for abuse of discretion when the alleged abuse of discretion consists only of the making of an informed judgment by the agency. In the subsections which follow, we apply these alternatives to the facts of the case at hand.

## A.

■ We now turn to the first of our two immediate problems: the reviewability of the decision of the forest supervisor that CLR was unqualified to receive a special use permit for construction of a resort. Counsel for NIC and CLR has made the argument that action under the statute [16] is not committed to agency discretion. We disagree. The statute gives the Secretary of Agriculture general power to grant or deny a special use permit for use of national forest land for construction of a recreational facility. The secretary is "authorized," not required, to issue permits "under such regulations as he may make and upon such terms and conditions as he may deem proper," subject to the condition that the general public be not precluded from full enjoyment of the national forests. We have discovered no statutory restrictions or definitions prescribing precise qualifications for permittees. The question of who is qualified to receive a permit for construction or operation of a recreational facility has patently been left to the secretary or his delegate to answer. The statute is, with respect to the proper recipient of a special use permit, drawn in such broad terms that there is no law to apply.

■ Counsel for NIC and CLR has argued that the language, particularly the word "authorized," of the statute is neutral, indicating no clear congressional intention to commit to agency discretion

16. 16 U.S.C. § 497 (1970).

the power to grant or deny a special use permit to a successor group of investors. In support of this proposition, counsel relies on Red Canyon Sheep Co. v. Ickes, 69 App.D.C. 27, 98 F.2d 308 (1938), where the word "authorized" as it was used in the Taylor Grazing Act [17] was construed. Counsel rightly notes that, under the holding in *Red Canyon Sheep,* the context and purpose of the entire statute must be looked to before a court can determine whether judicial review is or is not permitted.

Other cases which have treated a similar problem arising under the Taylor Grazing Act include Mollohan v. Gray, 413 F.2d 349 (9th Cir. 1969); Sellas v. Kirk, 200 F.2d 217 (9th Cir. 1952).

In these cases broad discretion was found to exist in areas similar to that with which we are here concerned. In considering the context and purpose of the statute, we find that we must disagree with counsel and that we share the view of the panels which decided *Mollohan* and *Sellas.* Agency expertise and knowledge is deeply involved in the decision to award a special use permit. What is needed, and where, are questions best answered by the forest service, which is involved on a daily basis with the management and use of the national forests. The federal courts have no such expertise, nor, in this case, do the courts have any standards by which acceptance or rejection of a particular applicant could be tested. These factors imply that the decision to award a special use permit for construction and operation of a recreational facility was left with the issuing authority and that Congress did not intend for the federal courts to redetermine the question who was qualified to receive a permit. Hi-Ridge Lumber Co. v. United States, 443 F.2d 452 (9th Cir. 1971). We hold that the decision here involved was committed to agency discretion by law and that federal courts have no jurisdiction to review such a decision.

**B.**

We now turn to our second and more serious problem, the reviewability of allegations that the forest service did not act in conformity with law when rejecting the application for a permit presented by a successor-group of investors. We find this problem to be more serious, because it is the successor-applicant, often a creditor, who is most vulnerable to injury through denial of a permit. It is on this fact that counsel for NIC and CLR hits hardest; however, although the plight of the creditors of NIC is severe, we find under the present circumstances relief from the courts is not available.

We have treated the prior history of this matter fully and have reproduced excerpts from the statutes, regulations and pertinent decisions for the following reason: Taken at face value, the allegations in the complaint pertaining to the purported failure of the forest supervisor to conform to the November 4, 1971, mandate of the board of forest appeals, and to comply with pertinent regulations, provisions of the forest service manual and clause twelve of the NIC permit, state issues which are proper for judicial review.[18] United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); East Oakland-Fruitvale Planning Council v. Rumsfeld, 471 F.2d 524 (9th Cir. 1972); Adams v. Witmer, 271 F.2d 29 (9th Cir. 1958). In treating issues of this sort there is some law to apply, and certain questions of law, of the type which daily confront the courts, are presented. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Thus the question whether the forest service acted in conformity with applicable law in receiving and handling

---

17. 43 U.S.C. § 315 et seq. (1970).

18. We are compelled to reach this conclusion. Having done so, we express our sympathy with the district judge who was confronted with the diffuse pleadings and argument put forth by counsel for the plaintiff in this case.

the application for a special use permit submitted by a successor-group of investors does not wholly concern action rendered immune from judicial review because committed to agency discretion by law. And the court below did have jurisdiction to decide whether the forest service acted lawfully. Yet, upon consideration of the whole record, we hold that the district court properly dismissed the complaint, even though it contained allegations of the sort described.

■ Although the court below expressly dismissed the matter for lack of jurisdiction, it is apparent from reading the district court's order that the district judge considered the pertinent statutes, regulations, clause twelve of the permit, and the administrative decisions before dismissing the case. As to the allegations of the complaint treated in this section, it seems then that the district judge's action should have been characterized as, and was required to be, dismissal for failure to state a claim upon which relief could be granted. It was stated in the opinion in Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946):

> . . . [I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

In light of our determination that the claims alleged warranted judicial review, if the judgment of the court below is to be sustained, it must be for failure of the complaint to state a claim, rather than for want of jurisdiction. If this ground is meritorious we may affirm, despite the fact that this was not the express ground upon which the district court relied. Harvey v. Sadler, 331 F.2d 387 (9th Cir. 1964).

■■ Although allegations of a complaint must ordinarily be taken as true when a case reaches us in the present posture, the court is not required to read the allegations in isolation. Schilling v. Rogers, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960). And a general allegation that agency action was arbitrary, capricious or contrary to law adds nothing to a complaint. East Oakland-Fruitvale Planning Council v. Rumsfeld, 471 F.2d 524, 535 (9th Cir. 1972). Here the facts pled, taken together with the administrative decisions made part of the record by the parties, affirmatively show that the particular assertions made with which we are concerned in this section fail to state a claim for relief. Clause twelve of the permit, pertinent provisions of the forest service manual, the applicable regulations, and the November 4, 1971, decision of the board of forest appeals make granting of a permit to a successor group of investors subject to the approval of the applicant's qualifications by the issuing forest officer. Put another way, the law that a court might here apply creates no strictures on the discretionary power of the forest officer to determine whether creditors who wish to salvage an operation run by a debtor permittee are themselves qualified to receive a permit. By making a determination that CLR was not qualified as a permittee, the forest service has not violated the law; rather it has employed its expertise and judgment in a way that the law has contemplated. Furthermore, the record affirmatively shows that any procedural requirements incumbent upon the forest officer in making his decision to grant or deny were met. Thus, the allegations in the complaint that the forest supervisor acted in a manner contrary to law are empty words.[19]

---

**19.** That the power to grant or deny issuance of special use permits is intended by the forest service to reside with the issuing officer alone is evidenced by 36 C.F.R. § 211.21(a)

Counsel for NIC and CLR have argued that the statutes, regulations and decisions rendered pertaining to special use permits have created a preferred class of applicants to whom the forest service is obliged to issue permits. That class comprises salvaging creditors and other, so-called, successor groups of investors. The forest service, it is claimed, erred in failing to recognize the preference owing to CLR. Counsel for NIC and CLR apparently have derived the notion that CLR has a preferred right to a permit from a reading of Red Canyon Sheep Co. v. Ickes, 69 App.D.C. 27, 98 F.2d 308 (1938) and of Oman v. United States, 179 F.2d 738 (10th Cir. 1949). Those cases concern the issuance of sheep grazing permits under the Taylor Grazing Act.[20] The preference mentioned derives from an express provision of the act.[21] No such provision appears in the statutes and regulations applicable in the instant case. For that reason, and for others which we do not here state, we find the cited cases inapposite.

## CONCLUSION

The decision of the district court is affirmed. The determination by the forest service whether an applicant for a special use permit is qualified to receive a permit is action committed to agency discretion by law and therefore unreviewable in the federal courts. A federal court has jurisdiction to determine whether the forest service has acted in conformity with law in receiving and handling an application for a special use permit submitted by a successor group of investors. But because the record affirmatively shows that applicable law was complied with in handling such an application, the successor group of investors herein involved has failed to state a claim upon which relief could be granted.

(1973). That regulation precludes review on appeal of a denial of issuance of a special use permit. It was because of this regulation that the board of forest appeals, in its June 23, 1972, decision declined to review the denial of a permit at issue here.

20.  43 U.S.C. § 315 et seq. (1970).

21.  43 U.S.C. § 315b (1970).