**MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY**

v.

**The UNITED STATES.**

**No. 369–72.**

United States Court of Claims.

June 19, 1974.

Judith A. Yannello, Washington, D. C., for plaintiff; John B. Tacke, Washington, D. C., attorney of record. Hudson, Creyke, Koehler, Brown & Tacke, Washington, D. C., of counsel.

Thomas L. McKevitt, Washington, D. C., with whom was Asst. Atty. Gen. Wallace H. Johnson, for defendant. Robert A. Zupkus, Washington, D. C., of counsel.

Before COWEN, Chief Judge, DUR-FEE, Senior Judge, and KASHIWA, Judge.

KASHIWA, Judge.

This is a suit for the return of $3,195, allegedly excessive fees paid annually under protest to the Department of Agriculture.

The action arises from plaintiff's dissatisfaction with the fee charged for a special-use permit issued by the United States Department of Agriculture, Forest Service, on June 17, 1960, authorizing plaintiff to maintain a microwave relay facility at a 125 x 150 square foot site on Mt. Lemmon in the Coronado National Forest, Pima County, Arizona. Plaintiff paid, since January 1, 1964, a $600 annual fee for the privilege of holding this permit. Plaintiff alleges that the fee should have been $300 per annum instead of $600. Plaintiff argues that the regulation (36 C.F.R. 251.3(a)) and its interpretation, authorizing a fee based on the value of the use in light of the investment in the property, constitute an abuse of discretion by the Secretary of Agriculture (hereinafter referred to as "Secretary").

Plaintiff alleges that it has paid the fees in issue herein under protest since January 1, 1964. A final decision against plaintiff in the administrative proceedings relating to its protest was issued by the Secretary on November 7, 1972. Portions of the decision, as relevant herein, read:

The central issue in this appeal is whether the Forest Service method of determining fees for electronic sites utilizing on-site investment as reiterated in Circular U–275 is a proper method of determining such fees for the use of Natonal Forest land under special-use permit. Appellant contends that the fee should be based on fair market value. A review of the record indicates that fair market value as described by the appellant is the value of undeveloped land as has been determined for recreation residence purposes.

The appellant takes the position in this proceeding that the Forest Service interpretation of 36 CFR 251.3(a) equating "value of the use" with value to the user, and the implementation through fees determined against on-site investment, are each unlawful exercises of administrative authority because:

1. A use charge based on other than fair market value standards is contrary to the will of the Congress.

2. Implementation of guide fees provided in Circular U–275 results

in arbitrary assessment against Mountain States because its on-site investment is not synonymous with value of the use.

3. The fee imposed may not be sustained because it is patently excessive and unreasonable.

4. Fees based on Mountain States investment on the site are contrary to public policy and the recommendations of the Public Land Law Review Commission.

\* \* \* \* \* \*

The position taken by the appellant is not persuasive in the matters of argument. I therefore sustain the decision of the Chief, Forest Service that microwave site fees are appropriately developed using the on-site investment approach and that the Mt. Lemmon fee was correct for the investment in place.

I decline to grant the relief sought for the following reasons: It is my belief that value of the use is an appropriate basis for charging a fee; that the Regulation as constituted has stood the test of time, it allows the use of the market to establish value for each particular kind of use, and raw land value in the context of appellant's pleading does not provide an appropriate rental for microwave purposes. I see no purpose being served in revising 36 CFR 251.3(2).

This action was filed on February 22, 1973. The issue presented herein is the same as that before the Department, and the arguments presented are substantially the same as those presented to the Department.

The case is now before us on cross motions for summary judgment. There are no material facts in dispute. Defendant's cross motion for summary judgment is allowed for reasons hereinafter stated.

 It is not disputed that management and control over lands of the United States is in Congress under Article IV, Section 3 of the Constitution. In Sierra Club v. Hickel, 433 F.2d 24, 28 (9th Cir. 1970), aff'd, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), the court said:

Article IV, Section 3 of The United States Constitution commits the management and control of the lands of the United States to Congress. That congressional power is unlimited. The Supreme Court said in Gibson v. Chouteau, 80 U.S. (13 Wall.) 92, 99, 20 L.Ed. 534 (1872):

"With respect to the public domain, the Constitution vests in Congress the power of disposition and of making all needful rules and regulations. That power is subject to no limitations."

See also Alabama v. Texas, 347 U.S. 272, 274, 74 S.Ct. 481, 98 L.Ed. 689 (1954).

Congress may delegate the power to manage federal lands to the Executive. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911); Light v. United States, 220 U.S. 523, 31 S.Ct. 485, 55 L.Ed. 570 (1911); Best v. Humboldt Placer Mining Co., 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963); United States v. Hymans, 463 F.2d 615 (10th Cir. 1972); McMichael v. United States, 355 F.2d 283 (9th Cir. 1965); United States v. Cassiagnol, 420 F.2d 868 (4th Cir. 1970), cert. denied, 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654; Sierra Club v. Hickel, *supra*. The basic statute relating to regulation of the national forests is 16 U.S.C. § 551. It reads as follows:

The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests which may have been set aside or which may be hereafter set aside under the provisions of section 471 of this title, and which may be continued; and *he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from de-*

*struction*; \* \* \*. [Emphasis supplied.]

The statute reveals a clear intent of Congress to commit regulation of the national forests to the discretion of the Secretary. A similar statute relating to the regulation of federal property placed in charge and control of the General Services Administration (hereinafter referred to as "GSA") is 40 U.S.C. § 318. In United States v. Cassiagnol, *supra*, 420 F.2d at 876–877, with relation to the delegation to GSA of the authority to make regulations governing the operation, maintenance, and use of such property under its control, the court held:

> \* \* \* It is clear that Congress has constitutional power to "make all needful Rules and Regulations" concerning government property. Under such constitutional authority Congress delegated the authority to make regulations governing the operation, maintenance and use of government property to the GSA Administrator. Such authority necessarily had to be somewhat general in nature due to the vast number and great variety of properties entrusted to the charge and control of GSA, but this authority, contrary to appellants' contention, was not unlimited. GSA was given physical control and custody of a wide variety of public buildings in and out of the District of Columbia, including courthouses, customhouses, barge offices and office buildings. The function exercises in relation to such property is essentially one of maintaining, operating and protecting buildings and grounds for the uses for which they have been designated. Congress fixes the governmental purpose of a particular piece of property and limits the GSA Administrator's power to make "needful rules and regulations" to maintain and protect such property and ensure its use for the authorized purpose. To require Congress specifically to enumerate GSA's duties would be to require the impractical if not the impossible. Similar grants of general regulatory and administrative authority are common, e. g., national parks, national military parks and battlefields, national forests, watersheds, etc. It is reasonable and constitutional to delegate to the agency charged with maintenance and protection of government property the right to fix the hours and places where the property may be entered by the public, as well as minimum acceptable conduct thereon, and to provide for the punishment of those violating such regulations. As was stated in United States v. Grimaud, 220 U.S. 506, 521, 31 S.Ct. 480, 484, 55 L.Ed. 563 (1911), *supra*,
>
> > " \* \* \* [T]he authority to make administrative rules is not a delegation of legislative power, nor are such rules raised \* \* \* to a legislative character because the violation thereof is punished as a public offense."

We find 40 U.S.C. § 318 to be a constitutional delegation of administrative authority to the Administrator of GSA to promulgate "needful rules and regulations" pertaining to government property under the charge and control of GSA. [Footnotes omitted.]

Among the terms which may be set by the Forest Service to accompany use of federal lands is the payment of permit fees. These fees may be fixed in an amount determined by the Forest Service. United States v. Grimaud, *supra*, 220 U.S. at 521–522, 31 S.Ct. 480; Pankey Land and Cattle Co. v. Hardin, 427 F.2d 43 (10th Cir. 1970). In United States v. Golden Gate Bridge and Highway Dist. of California, 37 F.Supp. 505, 510 (N.D.Cal.1941), aff'd, 125 F.2d 872 (9th Cir. 1942), cert. denied, 316 U.S. 700, 62 S.Ct. 1298, 86 L.Ed. 1769, the court said, "There can be no doubt that when the Secretary has the authority 'in his discretion' to grant the permit, he has the power to condition it."

Pursuant to 16 U.S.C. § 551 above quoted, the Secretary has promulgated certain regulations concerning the national forests. Among them are the following, authorizing the Forest Service

to issue special-use permits and establish fees therefore:

36 C.F.R. 251.1 (1960 Ed.)

(a) Special uses. (1) All uses of national forest lands, improvements, and resources, including the uses authorized by the act of March 4, 1915 (38 Stat. 1101), as amended July 28, 1956 (Pub.Law 829, 84th Cong.; 70 Stat. 708; 16 U.S.C. 497), the act of March 30, 1948 (62 Stat. 100; 48 U.S.C. 341), and section 7 of the act of April 24, 1950 (64 Stat. 84; 16 U.S.C. 580d), and excepting those provided for in the regulations governing the disposal of timber and the grazing of livestock or otherwise specifically authorized by acts of Congress, shall be designated "special uses," and shall be authorized by "special use permits."

36 C.F.R. 251.3(a) (1960 Ed.)

(a) Special use permits, except as otherwise provided in this section or § 251.2, or specifically authorized by the Secretary of Agriculture, *shall require the payment of a fee or charge commensurate with the value of the use authorized by the permit, the amount of which shall be prescribed by the Chief of the Forest Service.* * * * [Emphasis supplied.]

The Secretary has adopted a fee schedule which reflects "value of the use" as set by 36 C.F.R. 251.3(a). Great deference has always been given to the interpretation of a regulation by the agency charged with its administration. As stated in Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965):

* * * When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.

"Since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt * * *. [T]he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700.

 Further, there is a presumption of the regularity of administrative action. Thompson v. Consolidated Gas Utilities Corp., 300 U.S. 55, 69, 57 S.Ct. 364, 81 L.Ed. 510 (1937); Pacific States Box & Basket Co. v. White, 296 U.S. 176, 185, 56 S.Ct. 159, 80 L.Ed. 138 (1935). This presumption is not rebutted by the mere fact that an agency's particular course of action is unique as compared to either the private sector or to the remainder of Government. And even failure to follow a "long established custom" does not render illegal an action of a federal official that is within the scope of his authority. Pennsylvania Water & Power Co. v. Federal Power Commission, 74 App.D.C. 351, 123 F.2d 155 (1941), cert. denied, 315 U.S. 806, 62 S.Ct. 640, 86 L.Ed. 1205 (1942); Federal Communications Commission v. WOKO, Inc., 329 U.S. 223, 228, 67 S.Ct. 213, 91 L.Ed. 204 (1946); 2 Davis Administrative Law Treatise, sec. 17.07, pp. 525–530.

Since the amount of recovery involved in individual communication permit cases is small and they are usually settled, it is unfortunate that there are not many reported cases. But this court's attention has been called to a recent unreported decision which is much in point. In United States v. Industrial Communications System, Inc., USDC CD Calif., No. 69–1070–JWC, decided April 6, 1971, aff'd per curiam, C.A. 9, August 22, 1973, No. 71–2467, a case in which the Secretary was involved and concerning the same 16 U.S.C. § 551 and regulations 36 C.F.R. §§ 251.1 and 251.3, the court held:

Title 16 U.S.C. § 551 authorizes the Secretary of Agriculture to make rules and regulations relating to the use of national forests. Title 36, Code of Federal Regulations, §§ 251.1 and

251.3 govern the issue of special use permits which are to be issued by the Chief of the Forest Service or one of his agents, the charges for which shall be "a fee or charge commensurate with the value of the use authorized by the permit, the amount of which shall be prescribed by the Chief of the Forest Service."

A special use permit is not a lease, but is merely an authorization to use certain land upon payment of a fee. It creates a tenancy at will and may be revoked at any time, for any reason. Although the rules provide that the rental charged shall be "commensurate with the value" [Emphasis in original.] of the use authorized by the permit, it is clear that that the Chief of Forest Service is the person who has the authority to make that determination. *Once made, it is beyond review by this court unless the determination has been made arbitrarily or capriciously.* * * *

\* \* \* \* \*. \*

Furthermore, *according to the federal regulations, the rental fee is to be based upon "the value of the use authorized by the permit." There is nothing in the affidavits before this court which would indicate that the rental charge was otherwise determined.* [Emphasis supplied.]

In Ness Investment Corp. v. United States Department of Agriculture, Forest Service, 360 F.Supp. 127, 128 (D. Ariz., Phoenix Div. 1973),[1] the court said with relation to the discretion lodged in the Secretary:

It appears that plaintiffs seek to have the Court conduct a de novo hearing and find facts; and further, not only review the rejection of the application for a special use permit by Canyon Lake Resort, Inc., but to usurp the powers of the Forest Service and judicially set conditions and terms for a use permit at Canyon Lake and make a factual determination whether Canyon Lake Resorts fulfilled those conditions. Thus, what the plaintiffs are asking of the Court is to be architect, planner, engineer, conservationist, water recreation expert, financier, etc., all rolled into one in setting such conditions. *The Federal Courts have no jurisdiction and no expertise to set such conditions and terms for a use permittee.* [Emphasis supplied.]

As in *Ness, supra,* plaintiff is asking this court to "judicially set conditions and terms for a use permit" for microwave relay stations. Our authority in this case is limited to those circumstances in which the Government has acted arbitrarily.[2]

The "value of the use" concept found in 36 C.F.R. 251.3(a) has a long history of use by the Secretary. As indicated by the affidavit of Robert W. Long, Assistant Secretary of Agriculture, filed in support of defendant's motion, it first appeared in The Use Book, Regulations and Instructions for the Use of the National Forest Reserves, issued by the Secretary on July 1, 1906. As stated at page 63 of that document:

The charge for permits is based principally upon the value of that which is actually furnished to the permittee by the Forest Service, *including advantageous location* and other indirect benefits, and not directly upon the profits or the magnitude of the business which is carried on.

The concept was reiterated in The National Forest Manual, Regulations and Instructions, approved by the Secretary on February 1, 1926, which reads, in part, as follows:

In general, the charge should be based upon a *fair ground rental* of the area involved, taking into consideration the *purposes for which it is used*

---

1. The case has been appealed by the plaintiff therein to the Ninth Circuit.

2. We disagree with so much of the *Ness* decision as implies that the court cannot, even when discretion is arbitrarily applied, review the case.

* * *. Primarily, *the value of the land for the purpose desired rather than for some other use will govern* * * *. [Emphasis supplied.]

The "value of the use" concept was finally codified in 36 C.F.R. 251.3(a) in 1946.

█ We believe that the Secretary's decision to promulgate this regulation is well considered. The uses of the national forest are numerous and varied. Many uses present unique situations which preclude the existence of an identifiable free market. The concept of "value of the use" is thus the logical basis for a regulation governing permit fees within the national forests.

Besides being flexible, the "value of the use" standard is also equitable. This system for charging microwave-relay-site permit fees has existed unchanged for nearly 30 years and has been uniformly applied to all users. The fee that a potential user of the public domain could be charged is easily calculable. With advance knowledge of this cost, an individual is free to either accept or reject use of the national forests.

The Secretary, through the Chief of the Forest Service, acted consistently with the considerations behind 36 C.F.R. 251.3(a), as enumerated above. By utilizing "value of the investment" as the measure for the "value of the use" of national forest land as electronic sites, the Secretary has properly applied the regulation. The affidavit of John R. McGuire, Chief of the Forest Service, also filed in support of defendant's motion, reveals the soundness of this choice and demonstrates that there was no abuse of discretion. As noted in Mr. McGuire's affidavit, the standard of "value of the investment" was established by Circular U–275 issued by the Chief of the Forest Service on December 15, 1952. Before

this procedure was approved, many other methods for determining "value of the use" for electronic sites were considered. The alternatives included land values of general forest use and specific use, a percentage of net profit derived from the site, a percentage of company revenue generated by use of the site, a flat fee per acre, the condemnation value, a fee equal to return from forest products foregone because of this use, and a fee based upon the number of broadcast channels carried over a particular site. The views of American Telephone and Telegraph, plaintiff's parent company, were also duly considered prior to final adoption of the "value of the investment" standard. None of the methods considered were believed to be both convenient to determine fees and calculated to establish an equitable fee producing a fair return to the public for use of the national forests.

Plaintiff argues that "value of the investment" is not a proper measure for the "value of the use," but we do not agree. The Mt. Lemmon site is part of plaintiff's communication grid in the Southwest. As plaintiff increases its communication capacity, the value of the use of the Mt. Lemmon site increases. To increase communication capacity, plaintiff must install more equipment at that location. Consequently, investment at the site reflects the benefits accruing to plaintiff from its use of the national forest.

As stated in the Secretary's final decision, "use of the national forest land is, at a particular location, critical to the operation of a communication system and * * * the installation of equipment at such locations has a bearing on the value of the location of the user."[3] Since the Secretary's decision to pick "value of the investment" from among the other possibilities is most reason-

3. Counsel for plaintiff stated in the appeal hearing before the Department as follows: "In order to increase the Telephone Company's capacity to transmit communications, it was and is necessary for it to increase its investment. *Investment and capacity to transmit communications are, therefore, clo-* *sely related.* In the Mt. Lemmon case, the Telephone Company increased its capacity to furnish communication circuits, and consequently its investment on Mt. Lemmon, because it wished to satisfy present and future demands for telephone services." [Emphasis supplied.]

able, this court holds that there has been no arbitrary or capricious action which constitutes an abuse of discretion. Courts do not usually inject themselves in the administrative process where "experts may disagree [about matters involving] nice issues of judgment and choice * * * which require the exercise of informed discretion." Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 317, 78 S.Ct. 752, 757, 2 L.Ed.2d 788 (1958).

Plaintiff goes to great length in its brief regarding the recommendations of the Public Land Law Review Commission. The Commission has made many recommendations, but that is all they did. Plaintiff does not deny that it takes congressional action before the recommendations become effective.

The court deems it pertinent that Congress in 31 U.S.C. § 483a provided as follows:

It is the sense of the Congress that any work, service publication, report, document, benefit, privilege, authority, use, franchise, license, permit, certificate, registration, or similar thing of value or utility performed, furnished, provided, granted, prepared, or issued by any Federal agency (including wholly owned Government corporations as defined in the Government Corporation Control Act of 1945) to or for any person (including groups, associations, organizations, partnerships, corporations, or businesses), except those engaged in the transaction of official business of the Government, shall be self-sustaining to the full extent possible, and the head of each Federal agency is authorized by regulation (which, in the case of agencies in the executive branch, shall be as uniform as practicable and subject to such policies as the President may prescribe) to prescribe therefor such fee, charge, or price, if any, as he shall determine, in case none exists, or redetermine, in case of any existing one, to be fair and equitable taking into consideration direct and indirect cost to the Government, *value to the recip-*

*ient,* public policy or interest served, and other pertinent facts, * * *. [Emphasis supplied.]

We place emphasis on the phrase "value to the recipient." Although said section 483 is only permissive in nature, it shows that fair market value is not the only test. Aeronautical Radio, Inc. v. United States, 335 F.2d 304 (7th Cir. 1964), cert. denied, 379 U.S. 966, 85 S. Ct. 658, 13 L.Ed.2d 559 (1965).

Plaintiff points to the Act of September 3, 1954, 68 Stat. 1146, Pub.L. 771 (83rd Cong., 2d Sess.), 43 U.S.C. § 931c, which reads as follows:

The head of any department or agency of the Government of the United States having jurisdiction over public lands and national forests, except national parks and monuments, of the United States is authorized to grant permits, leases, or easements, in return for the payment of a price representing the fair market value of such permit, lease, or easement, to be fixed by such head of such department or agency through appraisal, for a period not to exceed thirty years from the date of any such permit, lease, or easement *to States, counties, cities, towns, townships, municipal corporations, or other public agencies for the purpose of constructing and maintaining on such lands public buildings or other public works.* * * * [Emphasis supplied.]

The Act uses the words "fair market value" but as our emphasized portion indicates, Congress intended the section to apply only where states, counties, cities, towns, townships, municipal corporations, or other public agencies are involved and for the purpose of constructing and maintaining public buildings or other public works. The statute is of very limited application but it is significant that when the Act was passed in 1954, the "value of the use" concept had been codified in 1946 in 36 C.F.R. 251.-3(a) by the Secretary under 16 U.S.C. § 551. It was not the intent of Congress to derogate any of the provisions of 36 C.F.R. 251.3(a) by the Act because a

proviso was added to the bill upon an express recommendation of the Department of Justice. Justice recommended the addition of the following proviso:

Sec. 2. The authority conferred by this Act shall be in addition to, and not in derogation of, any authority heretofore conferred upon the head of any department or agency of the Government of the United States to grant permits, leases, easements, or rights-of-way. [1954 U.S.Code Cong. & Admin.News, Vol. 3, p. 3925.]

The proviso was approved and it is now 43 U.S.C. § 931d in the exact words as recommended by Justice. Such jealous protection by Congress is relevant herein and is not to be taken lightly because the derogation plaintiff attempts is clearly prohibited by said section 931d.

* * * The general office of a proviso is to except something from the enacting clause, or to qualify and restrain its generality and prevent misinterpretation. * * * [United States v. Morrow, 266 U.S. 531, 534, 45 S.Ct. 173, 174, 69 L.Ed. 425 (1925).]

For the reasons above stated, we deny plaintiff's motion for summary judgment and allow defendant's cross motion for summary judgment. Plaintiff's petition is dismissed.