"This action, a claim for benefits under the Military Medical Benefits Amendments of 1966, § 2(7), 10 U.S.C. § 1086 (1970) (hereinafter referred to as CHAMPUS), is before the court on defendant’s motion for summary judgment.
"Plaintiff, a Second Lieutenant on the retired list of the United States Army who, defendant admits, qualifies for CHAMPUS benefits under Title 10 U.S.C. § 1086 (1970), asserts that the defendant has 'failed, neglected and refused’ to pay medical bills that were 'reasonably incurred’ by the plaintiff and 'compensable as CHAMPUS benefits.’ Suit was initiated to recover $390,696.00 which plaintiff alleges was wrongfully withheld.
"Defendant rejects plaintiffs allegations, arguing that the claims were initially refused because plaintiff did not provide any supporting documentation and finally refused only after an independent examination of the plaintiff and a thorough evaluation through the standard administrative process. Defendant’s basic contention is that plaintiffs *877 petition, even if all pleaded facts be accepted as true, fails to state a claim upon which relief can be granted.
"For the reasons discussed below, we find for the defendant and grant its motion for summary judgment.
"Commencing in January 1972, plaintiff submitted to the Medical Surgical Plan of New Jersey (the Plan), federal administrator for CHAMPUS benefits in the state, 32 C.F.R. § 577.71 (1976), various bills for treatment by physicians, inhalation therapists, and nurses, as well as the rental of certain durable medical equipment. Plaintiff claimed these services and equipment were necessary for the treatment of his 'chronic conditions,’ but provided no diagnostic records to support this claim of necessity. The Plan, acting as evaluator of claims pursuant to its contract with the Secretary of Defense,'32 C.F.R. § 577.71 (1976), withheld payment for certain of the claims amounting to $390,696.00, for which it did not have sufficient information to determine whether they resulted from 'procedures and types of care ... which are generally accepted as being part of good medical practice . . . .’ 32 C.F.R. § 577.64(b) (1976).
"Normal administrative procedure in instances where the Plan and an individual cannot agree concerning entitlement to benefits is to have the matter referred to a Peer Review Committee (Committee) composed of local physicians, pursuant to 32 C.F.R. § 577.82(a)(7)(1976), for analysis and recommendation. The Plan would then have an opportunity to concur in or dissent from the Committee’s recommendation prior to a final determination of entitlement by the Office for the Civilian Health Medical Program of the Uniform Services (OCHAMPUS) in Denver, Colorado.
"Plaintiff sought initial resolution of his dispute with the Plan through the proper administrative channels. The Committee, however, deciding that it also had insufficient evidence on which to base a decision, requested supporting documentation from the plaintiff. When this was not forthcoming, the Committee alternatively suggested that plaintiff enter a teaching hospital near his home, at CHAMPUS expense, so that his condition could be evaluated and the appropriateness of the billed medical services *878 determined. After making initial arrangements to comply with this request, plaintiff unexpectedly reneged and, after receiving notice from the Committee that it could not recommend payment without some support, filed suit against the Federal Government in the United States District Court for the District of New Jersey.
"The U.S. Attorney’s initial defensive thrust revolved around plaintiffs failure to exhaust his administrative remedies. Following a letter from the U.S. Attorney to plaintiffs Counsel which noted this defense and requested that plaintiff continue to seek administrative remedy, plaintiff "volunteered” to undergo the independent examination which he had earlier eschewed and agreed to submit the results to the Plan for resolution. A thorough study of the briefs and exhibits before us indicate that this examination was conducted with meticulous fairness to the plaintiff. His physicians were given every opportunity by the defendant to participate in the examination itself, although they made no effort to do so, and to evaluate and comment on the results. They were also afforded the opportunity to submit their own reports to the Committee for its consideration.
"After receiving this information from plaintiffs physicians, as well as the results of the independent examination, the Committee rendered its decision on November 3, 1975, recommending that payment be denied on the claims in question. This recommendation was approved by the Plan on December 2, 1975, and was adopted by OCHAMPUS on January 9, 1976. Six months later, the plaintiffs suit was dismissed by the District Court for lack of subject matter jurisdiction. This suit was instituted on December 1, 1976.
"While we agree with the District Court that jurisdiction over this matter is properly in the Court of Claims pursuant to 28 U.S.C. § 1346(d), we do not concur with the plaintiffs apparent inference that dismissal in the District Court implied a favorable resolution of plaintiffs claim in this court.
"What we have here is basically an attempt by plaintiff to turn his initial refusal and failure to exhaust his administrative remedies to his own advantage, despite the *879 fact that his subsequent utilization of the administrative process resulted in the justified denial of his claim. Although plaintiffs exact theory of recovery is unclear, he characterizes his suit as 'a run of the mill claim for insurance with which the local courts are familiar,’ Brief for Plaintiff at 7, and further states that 'the fact that the government is the ultimate payee (sic) does not change the basic situation.’ Id.
"The problem with this characterization is simply that plaintiffs claim is not merely a claim for payment under a private insurance contract; it is a claim for payment of benefits created by statute and payable from the national treasury. Regulations established by the Secretary of Defense under the authority of that same statute, the Military Medical Benefits Amendments of 1966, 10 U.S.C. 1071-1087 (1970), establish entitlements and provide administrative procedures through which eligibility of claimants and claims for payment are to be determined. 32 C.F.R. §§ 577.60-577.72. Plaintiff cannot escape these proper administrative channels merely by asserting that they do not exist, even though this is what he attempts to do.
"His first attempt at an 'end run’ was his suit in the District Court. There he faced the compelling defense that he had failed to exhaust his administrative remedies. In what he characterizes as an 'attempt to settle,’ he 'volunteered’ to go through exactly the same procedures as he would have had he originally followed the delineated administrative appeal process. After a thorough and fair examination and appeal on all levels, plaintiffs claims were denied.
"Now, because of a dismissal for lack of subject matter jurisdiction in District Court, he again seeks to avoid the consequences of the administrative determination by suit in this court, apparently basing his petition on the contentions that his bills were reasonably incurred and should be compensable and that he has no administrative remedies. The basic fallacy in this position is that there is, in fact, a procedure established to determine the reasonableness and compensability of claims; it is the very procedure which plaintiff followed in his 'attempt to settle.’ *880 The results of this administrative procedure can only be overturned upon a showing that the administrators 'acted arbitrarily, capriciously or were so grossly erroneous as to be in bad faith, as for instance where they may have acted without substantial evidence to support their decision or where they exceeded their authority.’ Morelli v. United States, 177 Ct.Cl. 848, 858 (1966); accord Schlegel v. United States, 189 Ct.Cl. 30, 36, 416 F.2d 1372, 1375 (1969), cert. denied, 397 U.S. 1039 (1970).
"This is particularly so when, as in this case, 'experts may disagree [about matters involving] nice issues of judgment and choice . . . which require the exercise of informed discretion.’ Mountain States Telephone and Telegraph Co. v. United States, 204 Ct.Cl. 521, 533, 499 F.2d 611 (1974), quoting Panama Canal Co. v. Grace Lines, Inc., 356 U.S. 309 (1958).
"Interpreting the pleadings, as we must, in the light most favorable to the plaintiff, he has failed to allege any facts and has failed to raise any arguments which could conceivably lead to any conclusion of arbitrary or capricious action. Plaintiff himself phrased it best when he stated, 'this is a dispute between physicians . . . .’ The physicians on the Committee, utilizing their 'informed discretion’ rendered a decision. We see no basis on which to contest that determination. For this reason, we must dismiss plaintiffs petition for failure to state a claim upon which relief can be granted, and grant defendant’s motion for summary judgment.
"it is therefore ordered, upon consideration of the pleadings, defendant’s motion for summary judgment and plaintiffs opposition thereto, without oral argument, that defendant’s motion for summary judgment be and hereby is granted. The petition is dismissed.”