NESS INVESTMENT CORPORATION, an Arizona Corporation, and Canyon Lake Resorts, Inc., an Arizona Corporation,

v.

The UNITED STATES.

No. 322–75.

United States Court of Claims.

March 21, 1979.

John C. Hughes, Phoenix, Ariz., attorney of record, for plaintiff; Hughes & Hughes, P. C., Phoenix, Ariz., of counsel.

Carol Lynn Green, Washington, D. C., with whom was Asst. Atty. Gen. James W. Moorman, Washington, D. C., for defendant.

Before DAVIS, KASHIWA and KUNZIG, Judges.

## OPINION

KASHIWA, Judge:

Plaintiffs in this case assert breach of contract and taking claims as a result of actions by the United States Forest Service (Forest Service) surrounding the revocation of a special use permit which authorized development of resort facilities in the Tonto National Forest, Arizona. The case has been submitted to the court upon a joint stipulation of facts. Defendant contends plaintiffs' claims are barred by res judicata and lack support in the record. After careful consideration of the parties' submissions and oral arguments, we conclude plaintiffs are not entitled to recover and therefore dismiss the petition.

The facts of the case, including the history of prior litigation between the parties, are as follows.[1] On May 18, 1965, the For-

---

1. The facts, in all material respects, are taken from the stipulation of facts submitted by the parties. Because our resolution of the case involves application of the doctrine of res judi- cata, a review of prior litigation between the parties is necessary and included in the fact presentation.

est Service issued a 20-year special use permit[2] to the Ness Investment Corporation ("Ness"). The permit authorized Ness to construct and operate a 46.01-acre resort facility at Canyon Lake in the Tonto National Forest, approximately 46 miles east of Phoenix, Arizona. Under the terms of the permit, Ness was required to build and maintain, *inter alia,* a marina with launching ramps and docks, a bath house, a swimming beach, a restaurant with a 20-unit motel, roads, parking lots, and water, electrical, and sewage systems for the facilities. Construction was to begin within three months, proceed according to a prescribed schedule, and be completed within three years. Ness started construction but encountered difficulties in meeting the schedule and in April 1967 the Forest Supervisor notified Ness to cease development of the Canyon Lake Resort and called for Ness to show cause why the permit should not be cancelled. On May 9, 1967, the Forest Supervisor purported to execute and proceeded to implement Amendment 4 to the Ness permit which would have reduced the permit area from 46.01 acres to 13.81 acres. This amendment was never legally effective, however, because it was not executed by Ness as required by the permit. An attempted revocation of the Ness permit in May 1968 was held invalid by the Board of Forest Appeals (hereinafter also referred to as the "Board"); but in September 1969 the Regional Forester again requested Ness to show cause why the permit should not be revoked.

Meanwhile the creditors of Ness, headed by one Mr. O'Brien, formed Canyon Lake Resort, Inc. ("CLR"), endeavoring to step into the place of the faltering Ness effort. Through a series of various legal maneuvers, the assets of Ness were transferred to CLR in November 1969.[3] Yet attempts to have the Ness permit transferred to CLR were unsuccessful for on March 16, 1970, the Forest Supervisor denied the application for transfer of the permit. Moreover, on May 4, 1970, the Chief, Forest Service, again revoked the Ness permit for failure to perform according to its terms.

Ness appealed the revocation of its permit to the Board of Forest Appeals and a hearing commenced in January 1971. Though the Board sustained the Ness permit revocation, it did instruct the Forest Service to reconsider CLR's application in place of Ness. No appeal from the decision sustaining the permit revocation was ever taken.

Pursuant to the Board's decision, CLR applied for the Ness permit on January 3, 1972. Again the Forest Supervisor denied CLR's application by letter of February 7, 1972, and told CLR it had 60 days within which "to remove any of your improvements from Canyon Lake."[4] On February 23, 1972, the Deputy Chief of the Forest Service notified Ness of the final revocation of the special use permit and by the same letter also gave Ness 60 days to remove any and all of its improvements from the resort area.[5] The Forest Service subsequently

2. In *Mountain States Tel. & Tel. Co. v. United States,* 499 F.2d 611, 616, 204 Ct.Cl. 521, 529 (1974), the court quoted from the decision in *United States v. Industrial Communications System, Inc.,* No. 69–1070–JWC (C.D.Cal. April 6, 1971), *aff'd per curiam,* No. 71–2467 (9th Cir. Aug. 22, 1973), which describes a special use permit as follows:

   A special use permit is not a lease, but is merely an authorization to use certain land upon payment of a fee. It creates a tenancy at will and may be revoked at any time, for any reason.

3. Subsequently on January 29, 1971, O'Brien executed an assignment transferring all physical assets at Canyon Lake to Ness.

4. Reasons for the Forest Supervisor's denial included CLR's insufficient financial showing, lack of proof of ownership of the lakeside improvements, and inadequate development plans and construction schedules.

5. This "sixty day" notification was given pursuant to the terms of Ness' special use permit and the Forest Service manual. Clause 11 of the Ness permit of March 24, 1967, reads:

   11. Except as provided in Clause 16 below, upon abandonment, termination, revocation, or cancellation of this permit, the permittee shall remove within a reasonable time all structures and improvements except those owned by the United States, and shall restore the site, unless otherwise agreed upon in writing or in this permit. If the permittee

seized the improvements and awarded the Canyon Lake permit to Newton Investments, Inc., in March 1973.

From February 7, 1972, until at least April 23, 1972, neither Ness nor CLR made any attempt either to remove the improvements from the permit area or to seek an extension of time for removal. Instead, on May 11, 1972, Ness and CLR sought and received an injunction from the United States District Court for the District of Arizona preventing the Forest Service from calling for new bids on the resort development and from impounding the assets on the permit area. Though the injunction was dissolved on September 18, 1972, plaintiffs petitioned the District Court to review the Forest Service's rejection of CLR's permit application. The District Court dismissed the petition in March 1973 for lack of jurisdiction, *Ness Investment Corp. v. United States Department of Agriculture,* 360 F.Supp. 127 (D.Ariz.1973). On appeal the Ninth Circuit Court of Appeals affirmed, with modifications, *Ness Investment Corp. v. United States Department of Agriculture,* 512 F.2d 706 (9th Cir. 1975) ("Ness I"). The Ninth Circuit concluded that because the decision of whether to grant a Forest Service permit was one committed to agency discretion, the court lacked jurisdiction. To the extent Ness and CLR charged the Forest Service had failed to follow applicable rules and regulations in denial of CLR's application, the Ninth Circuit found that all applicable law had been complied with and the allegations were mere "empty words." *Id.* at 717. Hence, these allegations of the complaint were dismissed for failure to state a claim upon which relief could be granted.

Ness and CLR had also filed an action in the District Court alleging a tortious conversion of property under the Federal Tort Claims Act (F.T.C.A.) and petitioning for just compensation for a public taking as a result of the Forest Service's imposition of an unreasonably short period of time (60 days) before seizure of the improvements on the Canyon Lake permit area. As to this action the District Court held that relief was unavailable in tort under the F.T.C.A. and that jurisdiction of the constitutional claim lay in the Court of Claims. The Ninth Circuit affirmed on appeal, *Ness Investment Corp. v. United States,* No. 74–2112 (9th Cir. June 10, 1975) ("Ness II").

Plaintiffs filed their petition in this court on September 2, 1975, alleging breaches of the special use permit by defendant and a conversion of their property for which they seek $500,000 in damages. The case is before the court upon a joint stipulation of facts by the parties pursuant to Rule 134(b), each party having notified the trial judge it did not wish to offer any further proof in the case.

From the foregoing facts plaintiffs distill three claims to support their request for judgment. First, plaintiffs maintain the Government's unilateral reduction of the Ness permit area from 46.01 acres to 13.81 acres through the invalid execution of Amendment 4 on May 9, 1967, constituted a material breach of the permit's terms entitling plaintiffs to damages. Second, plaintiffs contend the Forest Service's rejection of CLR's application for the Ness permit on February 7, 1972, violated applicable Forest Service rules and regulations and again breached their agreement with the Forest Service. Third, plaintiffs challenge the rea-

---

fails to remove all such structures or improvements within a reasonable period, they shall become the property of the United States, but that will not relieve the permittee of liability for the cost of their removal and the restoration of the site.

And the Forest Service Manual, Section 2716.4, *Disposition of Improvements,* states:

When a permittee is informed of revocation or termination he shall be given written notice of a definite date upon which all structures or improvements must be removed. He must be told that if they are not removed by the date set, they become property of the United States.

The period allowed for the removal of improvements will vary in each case. For improvements of a simple nature and with good access, a reasonable period may be three months.

sonableness of the decision by the Forest Supervisor to allow the plaintiffs no more than 60 days from the revocation of the permit within which to remove their improvements. Plaintiffs allege defendant effected a confiscation of their property equal to a taking without just compensation after expiration of the 60-day period. The unjustified imposition of a $1,500 use fee as a condition precedent to removal of the improvements, according to plaintiffs, further demonstrates the wrongfulness of defendant's actions.

Defendant counters plaintiffs' first argument concerning defendant's unilateral reduction of the permit area by asserting the claim is barred by the doctrine of res judicata. When the Board of Forest Appeals upheld the revocation of the Ness permit, it considered and rejected this claim. Since no appeal was taken from the decision, it is res judicata as to the issues involved. Plaintiffs' challenge to the Forest Service's refusal to grant CLR's application for the Ness permit is similarly barred, defendant states, but in this instance because the claim was dismissed by the Ninth Circuit in the Ness I decision. Consequently, defendant maintains the only argument plaintiffs can validly bring before this court is the legality and reasonableness of the Forest Supervisor's "sixty day" determination. On this score defendant insists plaintiffs have failed to sustain their burden of proof since plaintiffs made no attempt whatsoever to remove the improvements within the time allotted or to seek an extension of time. As more fully explained below, the court agrees with defendant's analysis of the issues.

■ We turn first to the question concerning the Forest Service's reduction of the Ness permit area on May 9, 1967. In its decision of November 4, 1971, the Board of Forest Appeals, F.S. Docket No. 134, sus-

tained the revocation of Ness' special permit finding, on page 11, " * ' * * there are substantial breaches of the conditions of the special use permit used to Ness Investment Corporation which warrant action to revoke the permit." Plaintiffs acknowledge that the issue of the Forest Service's attempted execution of Amendment 4 and the Government's reduction of the permit area was brought to the Board's attention as a defense to the Forest Service's permit revocation. Despite this, the Board concluded that Ness breached important provisions of the permit and that the "Chief's conclusion that no reason has been established for the excuse of such breaches is amply supported by the record before the Board." Page 8 of decision. If plaintiffs were convinced the Government's actions had in fact excused the breaches found by the Board, they could have appealed the Board's determination. Yet, in their May 11, 1972, complaint seeking an injunction before the Arizona District Court, Ness and CLR conceded they "have not appealed the decision of the Board of Forest Appeals dated November 4, 1971, and do not question the discretion of the Board which has been exercised in such decision." *Ness Investment Corp. v. United States Department of Agriculture,* 512 F.2d at 712 n. 7. Plaintiffs accepted the Board's decision on this question as final. Therefore, the decision of the Board of Forest Appeals is res judicata as to the issues involved, *United States v. Utah Construction and Mining Co.,* 384 U.S. 394, 421–422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *Safir v. Gibson,* 432 F.2d 137 (2d Cir. 1970), *cert. denied,* 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed.2d 246 (1970); *A. Duda & Sons Coop. Assoc. v. United States,* 495 F.2d 193, 197 (5th Cir. 1974); K. Davis, Administrative Law Text, § 18.02 (3rd ed. 1974), and plaintiffs' claim based on the unilateral reduction of the permit area must be dismissed.[6]

6. Our decision regarding this point is based strictly upon principles of finality and res judicata. Of course, under other circumstances, decisions of the Forest Service and the Board of Forest Appeals may be subject to review on the merits, *see Mountain States Tel. & Tel. Co.*

*v. United States,* 499 F.2d at 616 n.2, 204 Ct.Cl. at 530 n.2; *Timber Access Industries Co. v. United States,* 553 F.2d 1250, 213 Ct.Cl. 648 (1977).

Though plaintiffs in this action seek money damages for the alleged unilateral reduction of

Plaintiffs' second argument is that the Forest Supervisor's denial of CLR's application for the Ness permit violated Forest Service regulations and constituted a material breach of contract. This issue too has been considered and disposed of, not by the Board of Forest Appeals[7] but by the Ninth Circuit Court of Appeals in its decision of February 21, 1975, *Ness Investment Corp. v. United States Department of Agriculture, supra.* The Ninth Circuit specifically noted it was treating "the allegations that the forest supervisor acted in contravention of the November 4, 1971, decision of the board of forest appeals and that the forest supervisor failed to comply with statutes, regulations, provisions of the forest service manual, and clause twelve of the NIC [Ness] permit." *Id.* at 712. The court first determined the issue was one proper for judicial review. After a "consideration of the whole record," the court upheld the District Court's dismissal of plaintiffs' cause of action finding:

> By making a determination that CLR was not qualified as a permittee, the forest service has not violated the law; rather it has employed its expertise and judgment in a way that the law has contemplated. Furthermore, the record affirmatively shows that any procedural requirements incumbent upon the forest officer in making his decision to grant or deny were met. Thus the allegations in the

complaint that the forest supervisor acted in a manner contrary to law are empty words. [*Id.* at 717.]

■ The Ninth Circuit modified the District Court's dismissal by determining dismissal was to be for failure to state a claim upon which relief could be granted, which operates as an adjudication on the merits, *see Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946); 1B Moore's Federal Practice, ¶ 0.409[1] at 1005 (1974 ed.), rather than exclusively for lack of jurisdiction.[8] Thus the final decision of the Ninth Circuit rendered on the merits of plaintiffs' claim is res judicata as to the rejection of CLR's permit application and bars plaintiffs from relitgating the issue in this court.

We now address plaintiffs' taking and breach of contract claims based upon the Forest Service's seizure of the permit area improvements after expiration of the 60-day period following final revocation of the Ness permit. Plaintiffs presented the case to the District Court as one for tortious conversion under the F.T.C.A. or, in the alternative, for just compensation. The District Court ruled relief was unavailable in tort under the F.T.C.A. and that jurisdiction of the constitutional cause of action for compensation lay in the Court of Claims. On appeal the Ninth Circuit agreed and affirmed the dismissal.[9] Thus the allegations are properly before this court.

---

the permit area and actions for monetary damages are excluded from the jurisdiction of the Forest Service, 36 C.F.R. 211.101(b), the factual and legal questions relating to the alleged breach which plaintiffs present to this court are identical to those considered by the Board. The assertion of different legal theories in a second suit will not defeat application of res judicata, *McCarthy v. Noren,* 370 F.2d 845, 847 (9th Cir. 1966), *cert. denied,* 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967), nor will the fact that different types of relief are sought, *Samuel Blanken & Co. v. Goldblatt,* 125 U.S. App.D.C. 296, 371 F.2d 949 (1966).

7. Plaintiffs attempted to appeal the refusal to issue the permit to CLR but the Board of Forest Appeals found it lacked jurisdiction over decisions denying applications for special use permits, 36 C.F.R. 211.21(a) (1972), and denied the appeal accordingly on June 23, 1972.

8. The Ninth Circuit's dismissal of plaintiffs' claim was actually based both on lack of jurisdiction and a failure to state a claim upon which relief could be granted, *supra.*

9. *Ness Investment Corp. v. United States,* No. 74–2112 (9th Cir. June 10, 1975) (Ness II). The precise grounds for the Ninth Circuit's dismissal are not entirely clear. However, in contrast to Ness I, it appears dismissal was for lack of jurisdiction since the Ninth Circuit concluded the F.T.C.A. does not confer jurisdiction when the challenged conduct involves an exercise of administrative discretion even if that discretion is abused and that jurisdiction for a non-tortious taking or breach of contract cause of action belongs in this court. Res judicata is not properly invoked when dismissal of the previous action has been for lack of jurisdiction, *see* 1B Moore's Federal Practice, ¶ 0.405[5] (1974 ed.), *Baxter v. United States,* 122 Ct.Cl. 632 (1952).

■ Plaintiffs' objection to the reasonableness of the 60-day determination is based entirely upon the substantial nature of the improvements as described in the stipulation of facts. The construction performed and the effort expended were so extensive that allowance of a mere 60 days to undo the work, plaintiffs contend, was manifestly unreasonable. This approach, however, fails to satisfy plaintiffs' burden of proof. The court first notes that Forest Service regulations do not set a minimum period for removal of special permit improvements after permit revocation. Rather, as the Ninth Circuit found in Ness II, the setting of a reasonable period is for the most part a decision committed to agency discretion. And as again determined by the Ninth Circuit, we observe that the Forest Supervisor complied with all applicable rules and regulations in arriving at his decision. Second, plaintiffs have stipulated they never attempted to remove the improvements or to seek an extension of the 60-day period either orally or by letter.[10] Third, because plaintiffs obtained an injunction from the District Court on May 11, 1972, preventing seizure of the improvements until its dissolution September 18, 1972, they actually had a period from February 1972 until September 1972 to dispose of their property. Given the posture of the case, all pertinent facts having been stipulated, the court can only conclude the grant of 60 days was in fact reasonable and plaintiffs have failed to meet their burden of proof demonstrating otherwise. Plaintiffs were fully aware of the consequences if they failed to remove the improvements within the time specified.[11] Yet instead of making a bona-fide attempt to remove their property as ordered, or even taking the simple step of requesting an extension, plaintiffs chose to rest upon their singular assumption that the

60-day period was per se unreasonable. In light of plaintiffs' conspicuous inaction, a ruling holding the 60-day determination unreasonable would require the court to engage in extravagant speculation. The record does not show the Forest Service abused its discretion in determining 60 days would be a reasonable time for plaintiffs to remove or otherwise dispose of the improvements within the permit area. Government seizure of the improvements was according to the terms of the permit and the notice given plaintiffs upon permit revocation. Thus plaintiffs cannot prevail on their breach of contract, and taking arguments.

Nor is our disposition of the case changed by plaintiffs' contention concerning the allegedly illegal imposition of a $1,500 use fee. Plaintiffs theorize that the Forest Service placed the permit area in a "non-use" status in April 1967 by ordering Ness to cease development, thereby waiving the permit fee. Therefore, they urge the Forest Service's order to pay $500 per year for the years 1969, 1970, and 1971 "prior to removal of [the] improvements" was illegal and somehow excused plaintiffs' non-removal. The argument is unpersuasive. Clause 21 of the Ness permit established a minimum occupancy fee of $500 per year. The Forest Service Manual, at Section 2715.24(c) as stipulated by the parties, states, "All non-use shall be granted in writing for a definite period." If plaintiffs believed the order to cease development actually denied them complete use of the permit area, they could have sought a written grant of non-use status thus waiving the fee. However, they did not seek a waiver of the use fee pursuant to Forest Service Manual 2715.24(c) and the record contains no evidence of a written grant of non-use status for a definite period as required by the regulation. Absent a written

10. Furthermore, plaintiffs' counsel stated in oral argument that no efforts were made to begin negotiations with potential purchasers of the improvements in place, *i. e.,* subsequent permittees. Plaintiffs recognize the possibility that the improvements may have been sold yet do not attempt to explain why 60 days would have been insufficient time to accomplish such a sale.

11. Clause 11 of the Ness permit made it clear that improvements not removed within a "reasonable period" would become the property of the United States as did the Forest Supervisor's letter dated February 7, 1972, denying CLR's permit application and the letter notifying Ness of final revocation dated February 23, 1972.

grant of non-use status, nothing barred the Government from asserting the $1,500 fee under the terms of the permit and according to the Forest Service Manual. The Government's request for the fee in 1972 was not illegal simply because waiver of the fee in 1967 or thereafter would probably have been appropriate had plaintiff sought a fee waiver.

In any event, we do not think payment of the requested fee was actually a condition precedent to removal as characterized by plaintiffs. Evidently plaintiffs did not consider the fee request to be of great significance either, for even after the February 1972 notices no waiver was ever sought. Plaintiffs may have demonstrated the conditional nature of the fee payment by seeking waiver or by attempting to remove their property without paying the fee, but this did not occur. Under these circumstances the court finds request of the $1,500 was proper, but it was not a condition precedent to removal of the improvements and did not excuse plaintiffs' failure to do so.

## CONCLUSION OF LAW

To summarize, we hold that the Board of Forest Appeals decision rendered November 4, 1971, F.S. Docket No. 134, is res judicata as to plaintiffs' claim based upon the Government's unilateral reduction of the permit area; that the Ninth Circuit Court of Appeals decision in *Ness Investment Corp. v. United States Department of Agriculture*, 512 F.2d 706 (9th Cir. 1975), is res judicata as to plaintiffs' claim based upon the Government's rejection of CLR's permit application; and that the Government's setting of a 60-day period for removal of plaintiffs' improvements was reasonable and, therefore, its subsequent seizure of the improvements was lawful. Accordingly, the plaintiffs' petition is dismissed.