Willie M. **PRINDLE**, as widow of Dayo Prindle, deceased

v.

The **UNITED STATES**.

No. 580–82C.

United States Claims Court.

July 12, 1984.

**494**

William A. MacGuire, Orange, Va., attorney of record for plaintiff.

Mary Mitchelson, Washington, D.C., with whom were Acting Asst. Atty. Gen. Richard K. Willard and Sandra P. Spooner, Washington, D.C., for defendant.

1. *See* also 32 C.F.R. Part 199, "Implementation of the Civilian and Medical Program of the Uniformed Services" [sic] (1978). References in this opinion to statutes or regulations are to the provisions in force during the relevant time frame.

## OPINION

WOOD, Judge:

In this action, before the court on defendant's motion for summary judgment and plaintiff's opposition thereto, plaintiff, whose late husband was a retired lieutenant commander of the Navy, sues to recover an amount representing the cost of health care rendered to the decedent at a private nursing facility during the seven-month period immediately preceding his death.

The claim of right to recover is founded on the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"), established pursuant to the Dependents Medical Care Act of 1956, as amended, 10 U.S.C. §§ 1071–89 (1982), and implemented, during the period here relevant, by Department of Defense (DOD) Regulation 6010.8–R, 42 Fed.Reg. 17972, April 4, 1977.[1] Defendant contends that there is no genuine dispute with respect to any material fact, and that on the record before the court the administrative denial of plaintiff's claim (on the ground that the care the decedent received during the period here in issue was custodial in nature, and therefore specifically excluded from coverage under CHAMPUS) should be sustained. Those contentions have merit. Defendant's motion for summary judgment is therefore granted, and plaintiff's complaint will be dismissed.

### I

On March 27, 1977, while a "covered beneficiary" under CHAMPUS (see 32 C.F.R. § 199.9 (1978)), the decedent suffered a myocardial infarction; severe brain damage due to anoxia resulted.[2] After a brief stay in a civilian hospital, he was transferred to a Navy medical facility. He remained there until August 29, 1977, when he was moved to the Cathedral Health and

2. The facts stated are derived from the pleadings and papers on file in this case. Unless otherwise indicated, those facts, are, at least for the purpose of ruling upon defendant's motion for summary judgment, undisputed.

Rehabilitation Center ("the Center"), a private "skilled nursing facility," 32 C.F.R. § 199.8(b)(160) (1978). He remained a patient at the Center to his death on July 26, 1978. To December 31, 1977, the cost of the decedent's stay at the Center was borne by defendant.[3] For the period January 1, 1978, to July 26, 1978, however, only "CHAMPUS benefits for all prescription drugs administered to the patient and for one hour of nursing care per day" have been extended.

More specifically, on May 24, 1978, the Office of the Civilian Health and Medical Program of the Uniformed Services (OCHAMPUS) formally denied governmental responsibility for the cost of the decedent's care at the Center, on the ground that his care was primarily "custodial." (*See* 10 U.S.C. §§ 1077(b)(1), 1086; 32 C.F.R. § 199.8(b)(18), (46) (1978)), defining custodial care, and providing in pertinent substance that such care is not covered under the CHAMPUS Basic Program). Plaintiff alleges that on the decedent's death she was left "with an unpaid bill * * of approximately $24,000," most of which "is the responsibility of OCHAMPUS under applicable regulations."

Following OCHAMPUS's denial of responsibility, plaintiff requested, and received, a hearing before a CHAMPUS hearing officer.[4] Under date of July 8, 1980, the hearing officer recommended that OCHAMPUS "recognize the propriety of the [plaintiff's] claim, except for coinsurance, for the period January 1, 1978, through July 26, 1978."[5] The hearing officer's recommended decision was reviewed by the Acting Assistant Secretary of Defense (Health Affairs). In a Final Decision, dated September 22, 1981, the Acting Assistant Secretary declined to follow the hearing officer's recommendation, finding "that the care rendered the deceased patient in this case was primarily custodial in nature (and was custodial since the time of admission) and was therefore of a type of care which does not qualify for CHAMPUS Basic Program benefits."[6]

## II

■ Plaintiff's complaint alleges that the decedent was "provided * * * skilled nursing and medical care at * * *" the Center from his admission August 29, 1977, to his death July 26, 1978. The final administrative decision denying the bulk of plaintiff's claim was to the contrary, however, and the government's answer herein not only denies the said allegation but affirmatively asserts that "the care provided [the decedent at the Center] is custodial care and thus excluded from cost-sharing." And, defendant has now moved for summary judgment, asserting (among other things[7])

3. It was ultimately determined administratively that the payment of benefits under CHAMPUS for the period August 29, 1977, to December 31, 1977, had been "in error," but recoupment of all benefits paid for the said period was duly waived. Defendant does not now question the propriety of that waiver.

4. The record before the court includes a transcript of the hearing, and a "Hearing File" containing a considerable number of exhibits and consisting of several hundred pages.

5. The record also includes the hearing officer's recommended decision, a memorandum from the Director, OCHAMPUS, to the Principal Deputy Assistant Secretary of Defense (Health Affairs) recommending rejection of the recommended decision, and a Final Decision described below.

6. The Final Decision did waive recoupment of benefits paid for the period prior to January 1, 1978. *See* n. 3, *supra.* It also extended some benefits (for prescription drugs and one hour per day of nursing care) from January 1, 1978, to the date of the decedent's death. *See* n. 11, *infra.*

7. Plaintiff's complaint contains overtones of a claim that defendant is estopped to deny liability for the amounts here claimed, and in its motion, defendant asserts that it is not "estopped to deny CHAMPUS benefits for [the decedent's] care at [the Center]." Plaintiff's opposition to the motion is silent as to a claim of estoppel. If plaintiff ever intended so to contend, the contention is deemed abandoned. *Nossen v. United States,* 189 Ct.Cl. 1, 18, 416 F.2d 1362, 1371 (1969), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970); *cf. Heckler v. Community Health Services,* — U.S. —, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Sellers v. United States,* 3 Cl.Ct. 551, 554 (1983).

that the final administrative decision that the care decedent received at the Center was custodial in nature is not arbitrary or capricious, unsupported by substantial evidence, or erroneous as a matter of law, that no genuine issue of material fact exists in these respects, and that the decision should therefore be sustained.[8]

Without pointing to any single "material fact" *genuinely* in dispute, without submitting any affidavits or other papers not already before the court, and without suggesting any new matter that would (or could) be presented at trial, if held, plaintiff seems to assert only that the care rendered to the decedent at the Center was not, *as a matter of fact,* custodial.[9] Accordingly, she concludes, the government's motion should be denied.[10] In the circumstances of this case, however, plaintiff's position is not a tenable one. On this record, simply alleging that the care furnished to the decedent was not custodial cannot make it so. Nor, in light of the governing case law, does the allegation serve to raise a genuine issue of material fact in that respect.

### III

The statutory foundation on which CHAMPUS rested in 1978 (and rests) explicitly excluded the availability of benefits for "Custodial Care"[11], defined as (32 C.F.R. § 199.8(b)(46) (1978)):

> that care rendered to a patient (i) who is mentally or physically disabled and such disability is expected to continue to be prolonged, and (ii) who requires a protected, monitored and/or controlled environment whether in an institution or in the home, and (iii) who requires assistance to support the essentials of daily living, and (iv) who is not under active and specific medical, surgical and/or psychiatric treatment which will reduce the disability to the extent necessary to enable the patient to function outside the protected, monitored and/or controlled environment. * * *

After a hearing, at which the plaintiff was given full opportunity to present whatever evidence and arguments she wished, the Acting Assistant Secretary of Defense for Health Affairs concluded that the care rendered to the decedent from the time of his admission to the Center to his death was custodial, within the meaning of the definition just cited, "and was therefore a type of care which does not qualify for CHAMPUS Basic Program benefits."

■ In evaluating plaintiff's claim and defendant's motion for summary judgment, the first issue to be considered (in light of the arguments presented by the parties) is the effect (if any) to be accorded that decision. Defendant asserts that, unless arbitrary, capricious, unsupported by substantial evidence, or legally erroneous, the decision deserves to be upheld, and that on careful scrutiny it is not subject to any vitiating defect. It is concluded that defendant's position is in both respects valid. *King v. United States,* 215 Cl.Ct. 876, 879–80, 566 F.2d 1190 (1977).

### A

In promulgating CHAMPUS regulations, the Department of Defense prescribed an

---

**8.** The main thrust of the government's argument in this case is that the final administrative decision was well-founded in the record and legally correct, and should therefore be affirmed. Defendant challenges neither the jurisdiction of this court to entertain and decide an action such as this one, nor plaintiff's right to bring it. *Cf. King v. United States,* 215 Cl.Ct. 876, 566 F.2d 1190 (1977).

**9.** While plaintiff's two-page memorandum in opposition is less than explicit, it appears to incorporate the supposition that the nature of the care rendered to the decedent at the Center can be judicially determined *de novo.* That supposition is, however, neither supported by any citation of authority nor sound. *See* Section III, *infra.*

**10.** There is a suggestion in plaintiff's memorandum that a denial of CHAMPUS benefits could not validly have been effective earlier than May 24, 1978. As defendant accurately notes, however, there are no factual disputes with respect to this aspect of the matter either. The legal issue is discussed below.

**11.** Even in a custodial care case, however, benefits could be (and in this case were) extended for otherwise covered prescription drugs and for one hour of nursing care per day. 32 C.F.R. § 199.10(e)(12)(iii)(a), (b) (1978).

elaborate scheme of administrative "review of benefit decisions by OCHAMPUS and by CHAMPUS Contractors who, under contract to OCHAMPUS, perform certain work in administering the CHAMPUS benefits." 32 C.F.R. § 199.16(a) (1978). While the establishment by the Department of appeal and hearing procedures "in no way shall be construed to deny the right to initiate legal action," 32 C.F.R. § 199.16(j) (1978), the effect to be accorded a final administrative decision in any such legal action is not specifically treated in either the basic statute or the implementing regulations.

As defendant contends, a *de novo* judicial determination of the nature of the care rendered to the decedent at the Center would plainly be inappropriate. *King*, 215 Cl.Ct. at 879–80, 566 F.2d 1190. In this situation, as in other analogous ones, "we see no reason to depart from the normal rule that administrative determinations * * * are not to be displaced by judicial determinations made entirely *de novo*." *Julius Goldman's Egg City v. United States*, 214 Cl.Ct. 345, 354, 556 F.2d 1096, 1100–01 (1977).[12] Rather, unless the final Secretarial determination, when reviewed on the record, is arbitrary or capricious, reflects an abuse of discretion, is unsupported by substantial evidence, or is violative of statute (or valid implementing regulation), it is "to be upheld." *Julius Goldman's Egg City*, 214 Cl.Ct. at 354, 556 F.2d at 1100; *see* also *Morrow v. United States*, 227 Cl.Ct. 290, 296, 647 F.2d 1099, 1102 (1981); *King*, 215 Cl.Ct. at 880, 566 F.2d 1190; *Mountain States Tel. & Tel. Co. v. United States*, 204 Cl.Ct. 521, 533, 499 F.2d 611, 615 (1974).[13]

**B**

■ When the Acting Assistant Secretary's final decision as to the nature of the care rendered to the decedent at the Center is tested against the governing criteria, that decision cannot be faulted. In finding that such care was primarily "custodial," within the meaning of statute and regulation, the Acting Assistant Secretary was fully supported by the language of the regulation, the decedent's voluminous medical records, the testimony of the decedent's physician before the hearing officer, and the hearing officer's own clear recognition "that much of the [decedent's] inpatient care [at the Center] could be categorized as primarily custodial."[14]

Moreover, prior to the final decision, the decedent's records had been submitted to the Colorado Foundation for Medical Care for peer review by a panel of three physicians (with specialties of neurology, internal medicine, and general practice). That panel unanimously found that the care rendered to the decedent at the Center was "custodial" in nature, as that word had been defined by CHAMPUS regulation. The Acting Assistant Secretary properly could, and patently did, rely heavily on that finding, and plaintiff cannot, and does not, demonstrate any error in either the finding itself or the reliance thereon. *King*, 215 Cl.Ct. at 880, 566 F.2d 1190.

In short, after affording plaintiff a full opportunity to present all of the evidence available, and after a careful, indeed painstaking, consideration of the entire record, the Acting Assistant Secretary found that the care rendered to the decedent at the Center was custodial in nature, and therefore excluded from coverage under CHAMPUS. That decision cannot fairly be char-

---

12. *See* also *Conservative Caucus, Inc. v. United States*, 228 Cl.Ct. 45, 51, 650 F.2d 1206, 1210 (1981); *Missouri Health and Medical Organization, Inc. v. United States*, 226 Cl.Ct. 274, 280, 641 F.2d 870, 874 (1981); *North v. United States*, 1 Cl.Ct. 93, 94, 555 F.Supp. 382 (1982).

13. "Courts do not usually inject themselves in the administrative process where 'experts may disagree [about matters involving] nice issues of judgment and choice * * * which require the

exercise of informed discretion.' *Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 317, 78 S.Ct. 752, 757, 2 L.Ed.2d 788 (1958)." *Mountain States*, 204 Cl.Ct. at 533, 499 F.2d at 618.

14. The hearing officer's recommendation that CHAMPUS benefits be allowed ignored the statutory prohibition against allowance of such benefits for custodial care, and fundamentally rested on other, untenable, grounds.

acterized as in any way arbitrary, capricious, unsupported by substantial evidence, an abuse of discretion, or legally erroneous.[15] It is therefore to be sustained.

---

15. To the extent, if any, plaintiff may assert that under a CHAMPUS regulation benefits should not have been denied for the period prior to May 24, 1978, the date OCHAMPUS denied responsibility for the cost of the decedent's care at the Center, the Assistant Secretary's final deci-

sion reflects (and plaintiff does not here deny) that the "regulation" was not in effect in 1978. Moreover, the "regulation" could not circumvent the statutory prohibition against allowance of benefits for custodial care in any event.